## Case No. 22-1226

*In the*

# United States Court of Appeals

*for the*

# Tenth Circuit

———— • ————

RANDY DEAN QUINT, JOHN LINN and MARK MOLINA,
individually and on behalf of all others similarly situated,

*Plaintiffs-Appellants,*

v.

VAIL RESORTS, INC.,
a Delaware corporation,

*Defendant-Appellee.*

_____

*Appeal from a Decision of the United States District Court for the District of Colorado - Denver*
*Case No. 1:20-CV-03569-DDD-GPG · Honorable Daniel D. Domenico, U.S. District Judge*

# APPELLANTS' OPENING BRIEF
## *Oral Argument Requested*

EDWARD P. DIETRICH, ESQ.
EDWARD P DIETRICH, APC
9595 Wilshire Boulevard, Suite 900
Beverly Hills, California 90212
(310) 300-8450 Telephone
(310) 300-8401 Facsimile
edward@dstlegal.com

*Attorney for Appellants,*
*Randy Dean Quint, John Linn*
*and Mark Molina*

 

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................... iv

GLOSSARY OF TERMS ....................................................................... xiv

STATEMENT OF PRIOR OR RELATED APPEALS ............................... 1

JURISDICTIONAL STATEMENT .......................................................... 2

ISSUES ON APPEAL ............................................................................. 3

STATEMENT OF THE CASE ................................................................. 4

    A.    Relevant Background ................................................................. 4

        1.    The Colorado Action ....................................................... 4

        2.    Vail's Motion to Stay the Colorado Action .................... 5

        3.    The California Federal Court Actions ............................. 6

            i.    *Heggen* ................................................................. 6

            ii.    *Gibson* ................................................................. 7

            iii.    *The Heggen/Gibson Settlement* ............................ 7

        4.    The California State Court Actions ............................... 8

            i.    *Hamilton I* ........................................................... 8

            ii.    *Hamilton II* .......................................................... 9

            iii.    Removal ............................................................... 9

            iv.    Retreat to California State Court ......................... 9

        5.    California State Court Settlement Approval ............... 10

    B.    The District Court's Denial of Appellants' AWA Motion ..... 10

SUMMARY OF ARGUMENT .................................................................. 14

STANDARD OF REVIEW...................................................................... 21

    A.    The Order is Subject to *De Novo* Review ............................... 21

    B.    The District Court's Determination of the Standard in
        Reviewing the R&R is Subject to De Novo Review

    C.    All Writs Act............................................................................ 21

    D.    Anti-Injunction Act ................................................................ 22

    E.    Colorado River Abstention.................................................... 22

ARGUMENT ........................................................................................ 25

    A.    The District Court Erred by Not Reviewing the R&R
        *De Novo* ................................................................................. 25

    B.    The District Court Committed Reversible Error by
        Concluding No Facts Supported Appellants' Contention
        that the Settlement Was Collusive........................................ 30

    C.    The District Court Erred in Failing to Enjoin Vail
        From Consummating The Sham California Actions
        Settlement ............................................................................. 41

    D.    The District Court Erred in Finding the AIA Precludes
        Enjoining Vail's Sham Settlement........................................ 42

    E.    The District Court Committed Reversible Error by Not
        Addressing Appellants' Argument that an Injunction
        Was Proper Under the "Authorized by Act of Congress"
        Exception .............................................................................. 46

    F.    Even if the AIA Applies, the District Court Should
        Have Enjoined Vail Under the "Authorized by Act of
        Congress" Exception............................................................. 50

G.      Even if the AIA Applies, the District Court Should
        Have Enjoined Vail Under the "In Aid of Jurisdiction"
        Exception ................................................................... 56

H.      The District Court Committed Reversible Error by
        Refusing to Issue the AWA Injunction Resulting in an
        Abstention in Favor of a State Court in Violation of the
        Colorado River Doctrine .......................................... 60

I.      The District Court Erred in Failing to Enforce the
        "First Filed" Rule ..................................................... 63

CONCLUSION ....................................................................... 67

STATEMENT REGARDING ORAL ARGUMENT .............................. 68

CERTIFICATE OF COMPLIANCE ........................................... 69

ADDENDUM

Order Overruling Objections to Magistrate Judge's Order
        On Motion For Emergency Permanent Injunction,
        Filed June 27, 2022 [Docket No. 143] .................... ADD-1

CERTIFICATE OF DIGITAL SUBMISSION

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## CASES

*Ackerman v. Exxonmobil Corp.*,
 734 F.3d 237 (4th Cir. 2013) ................................................... 54, 55

*Allianz Life Ins. Co. of N. Am. v. Muse*,
 No. 20-6026, 2022 WL 3701606 (10th Cir. Aug. 26, 2022) ...... 47, 48

*Ambort v. United States*,
 392 F.3d 1138 (10th Cir.2004) ...................................................... 22

*Anderson v. Bessemer City*,
 470 U.S. 564 (1985) ........................................................................ 29

*Baatz v. Columbia Gas Transmission, LLC*,
 814 F.3d 785 (6th Cir. 2016) ............................................. 63, 64, 65

*Banker v. Gold Res. Corp.*,
 776 F.3d 1103 (10th Cir. 2015) ..................................................... 49

*Beaudry v. Corrections Corp. of America*,
 331 F.3d 1164 (10th Cir. 2003) ..................................................... 47

*Birch v. Polaris Indus., Inc.*,
 812 F.3d 1238 (10th Cir. 2015) ..................................................... 21

*Bristol-Myers Squibb Co. v. Superior Court of Cal.*,
 137 S. Ct. 1773 (2017) ................................................................... 31

*Canaday v. Anthem Cos.*,
 9 F.4th 392 (6th Cir. 2021).............................................................. 32

*Chic. Pneumatic Tool Co. v. Hughes Tool Co.*,
 180 F.2d 97 (10th Cir. 1950) ......................................................... 17

*Chicago Pneumatic Tool Co. v. Hughes Tool Co.*,
 180 F.2d 97 (10th Cir. 1950) ......................................................... 41

*City of Cambridge Ret. Sys. v. Ersek*,
 921 F.3d 912 (10th Cir. 2019) ....................................................... 28

*Clothing Workers v. Richman Bros*,
    348 U.S. 511 (1955) ...................................................................... 58

*Colorado River Water District v. United States*,
    424 U.S. 800 (1976) ..................................................... 20, 60, 61, 62

*Cortez v. Purolator Air Filtration Prod. Co.*,
    23 Cal.4th 163 (2000) .............................................................. 58, 59

*Cullan & Cullan LLC v. M-Qube, Inc.*,
    No. 8:13CV172, 2014 WL 347034 (D. Neb. Jan. 30, 2014) ...... 33, 34

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014) ...................................................................... 31

*Davis v. St. Group Corp.*,
    488 F.3d 597 (3d Cir. 2007) .......................................................... 55

*Dowd v. Front Range Mines*, Inc.,
    242 F. Supp. 591 (D. Colo. 1965) .................................................. 58

*Equal Emp't Opportunity Comm'n v. City of Long Branch*,
    866 F.3d 93 (3d Cir. 2017) ............................................................ 28

*Figueroa v. Sharper Image Corp.*,
    517 F. Supp. 2d 1292 (S.D. Fla. 2007) .......................................... 35

*First Union Mortgage Corp., v. Smith*,
    229 F.3d 992 (10th Cir.2000) ........................................................ 48

*Fox v. Maulding*,
    16 F.3d 1079 (10th Cir. 1994) ....................................................... 20

*Goodyear Dunlop Tires Oper. v. Brown*,
    564 U.S. 915 (2011) ...................................................................... 31

*Gray v. CJS Sols. Grp., LLC*,
    No. cv-19-1008 (PAM/DTS), 2020 WL 4476440
    (D. Minn. Aug. 4, 2020) .......................................................... 33, 34

*Guerra v. Texaco Exploration & Prod., Inc.*,
    48 F. Supp. 2d 699 (S.D. Tex. 1998) ............................................. 17

*High Desert Relief, Inc. v. U.S.,*
    917 F.3d 1170 (10th Cir. 2019) ...................................................... 21

*Hillman v. Webley,*
    115 F.3d 1461 (10th Cir. 1997) .................................... 13, 17, 41, 43

*Hospah Coal. v. Chaco Energy,*
    673 F.2d 1161 (10th Cir. 1982) ...................................................... 19

*In Frith v. Blazon-Flexible Flyer, Inc.,*
    512 F.2d 899 (5th Cir. 1975) .......................................................... 54

*In re Checking Account Overdraft Litig.,*
    859 F. Supp. 2d 1313 (S.D. Fla. 2012) .................................... 17, 45

*In re Cmty. Bank of N. Virginia,*
    418 F.3d 277 (3d Cir. 2005)............................................................ 33

*In re Fundamental Long Term Care, Inc.,*
    873 F.3d 1325 (11th Cir. 2017) .............................................. 21, 22

*In re Kretzinger,*
    103 F.3d 943 (10th Cir. 1996) ........................................................ 30

*In re Lease Oil Antitrust Litig. No. II,*
    48 F. Supp. 2d 699 (S.D. Tex. 1998)........................................ 43, 44

*In re Managed Care Litig.,*
    236 F. Supp. 2d 1336 (S.D. Fla. 2002) .................................... 17, 45

*Inwood Labs. v. Ives Labs.,*
    456 U.S. 844 (1982) ........................................................................ 29

*Jackson-Platts v.GE Cap. Corp.,*
    727 F.3d 1127 (11th Cir. 2013) ...................................................... 22

*Johnson v. Spencer,*
    950 F.3d 680 (10th Cir. 2020) .................................................. 23, 24

*Kansas Pub. Emp. Ret. Sys. v. Reimer Koger,*
    77 F.3d 1063 (8th Cir. 1996) .................................................... 53, 54

*Katz v. Gerardi*,
    655 F.3d 1212 (10th Cir. 2011) ..................................................... 55

*Kim v. Allison*,
    No. 19-55807, 2021 WL 3627260 (9th Cir. Aug. 17, 2021) ............ 33

*Koon v. U.S.*,
    518 U.S. 81 (1996) ........................................................................ 23

*Landau v. Virdian Energy PA*, LLC,
    2017 WL 3581323 (E.D. Pa. April 3, 2017) .................................... 39

*Law Co. v. Mohawk Constr. Supply Co.*,
    577 F.3d 1164 (10th Cir. 2009) ..................................................... 23

*Lawson v. Grubhub, Inc.*,
    13 F.4th 908 (9th Cir. 2021) .......................................................... 58

*Levin v. HSBC Bank, N.A.*,
    99 F. Supp. 3d 288 (E.D.N.Y. 2015) .............................................. 45

*Lloyd v. J.P. Morgan Chase & Co.*,
    No. 11 CIV. 9305 LTS, 2012 WL 3339045
    (S.D.N.Y. Aug. 14, 2012) ............................................................... 66

*Lou v. Belzberg*,
    834 F.2d 730 (9th Cir. 1987) ......................................................... 54

*Malcolm v. Reynolds Polymer Tech., Inc.*,
    No. 17-CV-2835-WJM-KLM, 2018 WL 6695921
    (D. Colo. Dec. 20, 2018) ................................................................ 37

*Mandeville v. Canterbury*,
    318 U.S. 47 (1943) ................................................................. 56, 57

*Martin v. Medicredit, Inc.*,
    No. 4:16CV01138 ERW, 2016 WL 6696068
    (E.D. Mo. Nov. 15, 2016) ............................................................... 66

*Martinez v. Deaf Smith County Grain Processors*,
    583 F. Supp. 1200 (N.D. Tex. 1984) .............................................. 52

*Masciotra v. Vertafore, Inc.*,
    No. 20-CV-3603-WJM-NYW, 2021 WL 1720860
    (D. Colo. Apr. 30, 2021) ................................................................. 37

*Maseda v. Honda Motor Co., Ltd.*,
    861 F.2d 1248 (11th Cir.1988) ...................................................... 53

*Mitchum v. Foster*,
    407 U.S. 225 (1972) ................................................................. 51, 52

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983) ............................................................. 20, 22, 61

*Novak v. Federspiel*,
    No. 21-1722, 2022 WL 3046973 (6th Cir. Aug. 2, 2022) ............... 23

*Nowlan v. Cinemark, USA, Inc.*,
    2012 U.S. Dist. LEXIS 136235 (D. Colo. Sep. 24, 2012) ............... 38

*O'Donnell v. Ford Motor Co.*,
    2021 U.S. Dist. LEXIS 91795 (C.D. Cal. May 12, 2021) .............. 39

*O'Hare International Bank v. Lambert*,
    459 F.2d 328 (10th Cir. 1972) ...................................................... 41

*Ocelot Oil Corp. v. Sparrow Industries*,
    847 F.2d 1458 (10th Cir. 1988) ........................................ 26, 27, 48

*Pacesetter Sys., Inc. v. Medtronic, Inc.*,
    678 F.2d 93 (9th Cir. 1982) .......................................................... 66

*Parsons Steel, Inc. v. First Alabama Bank*,
    474 U.S. 518 (1986) ...................................................................... 58

*Peretz v. United States*,
    501 U.S. 923 (1991) ........................................................ 26, 27, 48

*Pippin v. Burlington Res. Oil Gas Co.*,
    440 F.3d 1186 (10th Cir. 2006) .................................................... 48

*Polyplastics, Inc. v. Transconex, Inc.*,
    713 F.2d 875 (1st Cir.1983) ......................................................... 53

*PTW Energy Servs., Inc. v. Carriere*,
    No. 19-CV-01436-REB-NYW, 2019 WL 3996874
    (D. Colo. Aug. 23, 2019)..................................................... 38

*Residences at Olde Town Square Ass'n v. Travelers Cas.*
    *Ins. Co. of Am.*,
    413 F. Supp. 3d 1070 (D. Colo. 2019)............................................. 28

*Reynolds v. Beneficial Nat'l Bank*,
    288 F.3d 277 (7th Cir. 2002) ......................................................... 14

*Rienhardt v. Kelly*,
    164 F.3d 1296 (10th Cir. 1999) ...................................................... 22

*Riley v. General Motors*,
    2022 WL 787871 (S.D. Ohio Mar. 15, 2022) ................................. 66

*Roes*, *1-2 v. SFBSC Mgmt., LLC*,
    944 F.3d 1035, (9th Cir. 2019) ................................................. 32, 33

*Rohe v. Wells Fargo Bank*,
    988 F.3d 1256 (11th Cir. 2021) ...................................................... 53

*Romag Fasteners, Inc. v. Fossil, Inc.*,
    140 S. Ct. 1492 (2020) ................................................................... 57

*Ross v. Convergent Outsourcing, Inc.*,
    323 F.R.D. 656 (D. Colo. 2018)..................................................... 33

*RSM Richter, Inc. v. Behr Am., Inc.*,
    729 F.3d 553 (6th Cir. 2013) ......................................................... 23

*RV Horizons, Inc. v. Smith*,
    No. 1:18-CV-02780-NYW, 2019 WL 1077366
    (D. Colo. Mar. 7, 2019) ................................................................. 39

*Sadeghi v. Immigration & Naturalization Serv.*,
    40 F.3d 1139 (10th Cir. 1994) ....................................................... 47

*Salve Regina College v. Russell*,
    499 U.S. 225 (1991) ....................................................................... 21

*SFM Holdings, Ltd. v. Banc of Am. Secs., LLC,*
    764 F.3d 1327 (11th Cir. 2014) ...................................................... 22

*Shoop v. Twyford,*
    142 S. Ct. 2037 (2022) .................................................................... 59

*Smith v. Bayer Corp.,*
    564 U.S. 299 (2011) ........................................................................ 50

*Span-Eng Assoc. v. Weidner,*
    771 F.2d 464 (10th Cir. 1985) ....................................................... 18

*Steffel v. Thompson,*
    415 U.S. 452 (1974) ........................................................................ 58

*Stone v. Dep't of Aviation,*
    453 F.3d 1271 (10th Cir. 2006) ..................................................... 55

*Syngenta Crop Prot., Inc. v. Henson,*
    537 U.S. 28 (2002) .......................................................................... 43

*Tooele Cnty. v. United States,*
    820 F.3d 1183 (10th Cir. 2016) ..................................................... 46

*Toucey v. N.Y. Life Ins. Co.,*
    314 U.S. 118 (1941) ................................................................ 57, 58

*Twp. of Bordentown v. Fed. Energy Regulatory Comm'n,*
    903 F.3d 234 (3d Cir. 2018)........................................................... 66

*U.S. v. Carson,*
    793 F.2d 1141 (10th Cir. 1986) ..................................................... 50

*U.S. v. Lozado,*
    776 F.3d 1119 (10th Cir. 2015) ..................................................... 23

*U.S. v. New York Tel. Co.,*
    434 U.S. 159 (1977) ........................................................................ 43

*U.S. v. Parke, Davis Co.,*
    362 U.S. 29 (1960) .......................................................................... 30

*U.S. v. State Water Res. Control Bd.*,
  988 F.3d 1194 (9th Cir. 2021) ........................................ 23

*Underwood v. Bank of Am. Corp.*,
  996 F.3d 1038 (10th Cir. 2021) ..................................... 49

*United States v. Raddatz*,
  447 U.S. 667 (1980) ............................................... 26, 27

*United States v. Singer Mfg. Co.*,
  374 U.S. 174 (1963) .................................................. 30

*United States v. United States Gypsum Co.*,
  333 U.S. 364 (1948) .................................................. 29

*Ute Indian Tribe of Uintah & Ouray Reservation v. Lawrence*,
  22 F.4th 892 (10th Cir. 2022) ...................................... 24

*Vallone v. The CJS Solutions Group, LLC*,
  9 F.4th 861 (8th Cir. 2021) ......................................... 32

*Vaqueria Tes Monjitas, Inc. v. Rivera Cubano*,
  230 F.R.D. 278 (D.P.R. 2005) ....................................... 38

*Vendo Co. v. Lektro–Vend Corp.*,
  433 U.S. 623 (1977) ............................................... 19, 53

*Vinick v. U.S.*,
  205 F.3d 1 (1st Cir. 2000) ........................................... 30

*Wakaya Perfection v. Youngevity*,
  910 F.3d 1118 (10th Cir. 2018) ................ 19, 20, 61, 62, 63, 64

*Walling v. Black Diamond Coal Mining Co.*,
  59 F. Supp. 348 (WD Ky.) ............................................ 52

*Winkler v. Eli Lilly & Co.*,
  101 F.3d 1196 (7th Cir.1996) ....................................... 59

*Wyandotte Nation v. Sebelius*,
  443 F.3d 1247 (10th Cir. 2006) ..................................... 23

## COURT RULES

10th Circuit Rule 28.2(C)(3) ................................................................. 1

Colorado Local Civil Rule 3.2 ...................................................... 16, 36

Colorado Local Civil Rule 3.2(c) ...................................................... 37

Colorado Local Civil Rule 3.2(c)(1) ................................................. 18

Fed. R. Civ. P. 3 ................................................................................. 66

Fed. R. Civ. P. 72 ............................................................................... 27

Fed. R. Civ. P. 72(b) .......................................................................... 25

## CONSTITUTIONS

United States Constitution, Article III ............................................... 2

## STATUTES

28 U.S.C. § 636 ................................................................................. 27

28 U.S.C. § 636(b)(1)(A) .................................................................. 26

28 U.S.C. § 636(b)(1)(B) .................................................................. 26

28 U.S.C. § 636(b)(1)(C) .................................................................. 27

28 U.S.C. § 1292(a) ............................................................................. 2

28 U.S.C. § 1331 ................................................................................. 2

28 U.S.C. § 1367 ................................................................................. 2

28 U.S.C. § 1446 ............................................................................... 52

28 U.S.C. § 1446(d) .......................................................................... 52

28 U.S.C. § 1651(a) ........................................................................... 41

28 U.S.C. § 2283 ................................................................... 19, 42, 57

29 U.S.C. § 201, et seq.................................................................2

29 U.S.C. § 216(b) ........................................................................2

California Code of Civil Procedure § 350................................66

California Labor Code § 2698, et seq .......................................9

## OTHER AUTHORITIES

Andrew, S. Weinstein, *Avoiding the Race to Res Judicata: Federal Antisuit Injunctions of Competing State Class Actions,* 75 NYU Law Rev. 1085 (2000).................................................39, 40

Daniel Wilf-Townsend, *Class Action Boundaries*, 90 Fordham L. Rev. 1611 (2022) .......................................32

Gallogly, Owen, *Colorado River Abstention: A Practical Reassessment*, 106 Virginia Law Review, 215 (May 1, 2019)........23

Madeline M. Xu, "*Form, Substance, and Rule 23: The Applicability of the Federal Rules of Evidence to Class Certification,*" 95 N.Y.U. L. Rev. 1561 (2020) ................................14

Marcel Kahan and Linda Silberman, *Matsushita and Beyond: The Role of State Courts in Class Actions Involving Exclusive Federal Claims*, 1996 Supreme Court Rev. 219 (1996) ...........44, 45

Philip S. Goldberg et al., *The U.S. Supreme Court's Personal Jurisdiction Paradigm Shift to End Litigation Tourism*, 14 Duke Journal of Constitutional Law & Public Policy 51-52 (2019) ...................................................................32

Rhonda Wasserman, *Dueling Class Actions*, 80 Boston University Law Review 461 (2000) ..........................................40, 41

# GLOSSARY OF TERMS

Pursuant to 10th Cir. R. 28.2(C)(6), Appellants provide the following glossary of terms utilized in this brief:

| Term | Definition |
| --- | --- |
| Appellants | A collective reference to the appellants in this appeal who are at times collectively referred to as the "Plaintiffs" or "Colorado Plaintiffs" and separately referred to as "Quint," "Linn," and "Molina." |
| AWA | The All Writs Act, 28 U.S.C. § 1651. |
| AIA | The Anti-Injunction Act, 28 U.S.C. § 2283. |
| CAFA | The Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d). |
| California Actions | A collective reference to the actions filed in California state courts against certain of Vail's subsidiaries: *Gibson v. The Vail Corp.*, No. 2:21-cv-01260-KJM-AC (E.D. Cal.) ("*Gibson*"); *Heggen v. Heavenly Valley, L.P.*, 2:21-cv-00107-WBS-DB (E.D. Cal.) ("*Heggen*"); and *Hamilton v. Heavenly Valley, L.P.*, 2:21-cv-01608-MCE-DB (E.D. Cal.) ("*Hamilton I*"); *Hamilton v. Heavenly Valley, LP*, No. SC20210148 (Cal. Sup. Ct.)(Hamilton II) |
| Colorado Action | The underlying litigation that is the subject of this appeal, *Randy Dean Quint, et al. v. Vail Resorts, Inc.*, Case No: 1:20-cv-03569-DDD-GPG (D. Colo). |
| Colorado River Doctrine | The judicial doctrine created by the Supreme Court in *Colorado River Water District v. United States*, 424 U.S. 800 (1976), which held, in pertinent part, ""abstention . . . is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy" and is justified "only in the exceptional circumstances where the order to the parties to repair |

| Term | Definition |
|------|------------|
| | to the State court would clearly serve an important countervailing interest." *Id.* at 813. |
| Complaint | The Colorado Action Plaintiffs' Class and Collective Action Complaint for Violations of Federal and State Labor Laws filed in the United States District Court for the District of Colorado on December 3, 2020. |
| District Court | The United States District Court for the District of Colorado. |
| FLSA | The Fair Labor Standards Act of 1938, 29 U.S.C. § 201, *et seq.* |
| HVLP | Heavenly Valley Limited Partnership, a Vail subsidiary operating Vail's Heavenly Valley ski resort in California. |
| Order | The June 27, 2022 Order Overruling Objections to Magistrate Judge's Order on Motion for Emergency Permanent Injunction (5-AA-1185-94). |
| R&R | Magistrate Judge Gordon P. Gallagher's Report and Recommendation dated March 9, 2022 denying Plaintiffs' emergency motion for an injunction under the AWA. |
| Settlement | Vail's settlement with the California Actions plaintiffs. |
| Vail | Defendant Vail Resorts, Inc. |
| Vail Management Co. | The Vail Corporation d/b/a Vail Resorts Management Company, a Vail subsidiary. |

## STATEMENT OF PRIOR OR RELATED APPEALS

Counsel for Appellants are unaware of any prior or related appeals within the meaning of 10th Circuit Rule 28.2(C)(3).

## JURISDICTIONAL STATEMENT

The District Court had jurisdiction over Appellants' FLSA claims pursuant to 28 U.S.C. § 1331 because such claims raise a federal question under 29 U.S.C. § 201, *et seq*. The District Court also had jurisdiction over Appellants' FLSA claims pursuant to 29 U.S.C. § 216(b) and original jurisdiction over Appellants' class claims via CAFA. The District Court had supplemental jurisdiction over Appellants' state law claims pursuant to 28 U.S.C. § 1367 because the state law claims and the federal claims are so closely related that they form part of the same case or controversy under Article III of the United States Constitution.

Appeal No. 22-1226 arises out of the District Court's Order overruling Appellants' objections to the Magistrate Judge's R&R denying Appellants' emergency motion under the All Writs Act. 5-AA-1185-1194. On July 26, 2022, Appellants timely filed their notice of appeal. 5-AA-1195-97. This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1292(a).

## ISSUES ON APPEAL

1.  When considering Appellants' objections to the Magistrate Judge's R&R, did the District Court commit reversible error by failing to review the R&R *de novo* and instead applying the "clearly erroneous or is contrary to law" standard.

2.  Did the District Court err in adopting the Magistrate Judge's recommendation to decline to exercise authority under the AWA to enjoin Vail from consummating a collusive "reverse auction" settlement in the California Actions.

3.  Did the District Court err in adopting the Magistrate Judge's finding that the AIA precluded application of the AWA.

4.  Did the District Court err in abstaining from enjoining the California Actions under the Colorado River Doctrine.

5.  Did the District Court err by failing to enforce the First Filed Doctrine.

## STATEMENT OF THE CASE

This appeal arises from the District Court's denial of Appellants' AWA motion to enjoin Vail from consummating an inadequate and collusive "reverse auction" settlement in a California state court designed extinguish the broader, stronger Colorado Action and the District Court's jurisdiction over Appellants' class and collective claims. 5-AA-1185-94.

## A.     Relevant Background

### 1.     The Colorado Action

Appellants—each a current or former Vail hourly employee, filed their Complaint on December 3, 2020, alleging FLSA and state labor law claims.   1-AA-24-202.   Appellants' claims were brought on behalf of themselves and a nationwide collective and classes of all "current and former Vail Resorts hourly employees who worked in the United States and who were not compensated for work-related equipment and cell phone costs or 'off-the-clock' work including, but not limited to, travel time, donning and doffing time, and training time during the three years preceding the filing of this Complaint through judgment []."   1-AA-28; 1-AA-56-60.   Appellants also alleged nationwide class claims for breach of contract and unjust enrichment.   1-AA-187-88.

4

Headquartered in Broomfield, Colorado, Vail operates 33 resorts and ski areas across the United States. 1-AA-39. Vail admits that the allegedly unlawful employment policies were formulated and implemented at its Colorado headquarters. 3-AA-677-79.

Since December 2020, the parties have engaged in extensive discovery and motion practice. 1-AA-10-23. On February 26, 2021, Vail filed a partial dismissal motion (1-AA-13), which the District Court denied on July 8, 2022. 1-AA-21. On April 21, 2021, Appellants filed motions to preliminarily certify the FLSA collective and disseminate notice (1-AA-14), which the District Court denied without prejudice on June 23, 2022. 5-AA-1175-84. On August 8, 2022, Appellants filed their motion for class certification (1-AA-21), which is *sub judice*.

### 2.    Vail's Motion to Stay the Colorado Action

On August 12, 2021, Vail sought to stay the Colorado Action for ninety days based on pending approval of a class settlement in two "parallel" actions. 1-AA-209 –2-AA-298. Those actions had been initiated in California state court against Vail subsidiaries, HVLP and Vail Management, respectively, and removed to the Eastern District of California. Vail asserted that the Settlement would "resolve and release

all outstanding claims against Vail Resorts" including in the Colorado Action.    1-AA-255.    In advocating for the stay, Vail represented the Settlement "will be subject to a rigorous settlement approval process" in federal court.    1-AA-264.    The District Court granted the stay (2-AA-374-79; 5-AA-1040-44) over Appellants' opposition (2-AA-299-362) and objection.    2-AA-380-405.

### 3.    The California Federal Court Actions

#### i.    *Heggen*

On October 21, 2020, *Heggen* filed a 19-page putative class action complaint against HVLP, a Vail subsidiary, in California state court asserting California Labor Code and Business and Professions Code claims on behalf of a class of non-exempt employees at Vail's Heavenly Valley resort in the State of California since April 6, 2016.    1-AA-585-611. *Heggen* disclaimed any claim under federal or other state law, relying "solely on California statutes and law."    1-AA-586.

On January 20, 2021, HVLP removed *Heggen* to the Eastern District under CAFA.    2-AA-618-699.    HVLP's removal papers asserted that "a conservative estimate of the amount in controversy" in the action exceeded at least $13 million.    3-AA-614. HVLP's removal notice included

a Declaration from Vail Management Co.'s Associate General Counsel,

stating the following under penalty of perjury:

> As a limited partnership HVLP's partners direct, control, and coordinate HVLP's business activities ***through its headquarters in Broomfield, Colorado***. Decision-making executives, marketing employees, and IT-infrastructure employees, are located in Broomfield, Colorado. Additionally, primary decisions concerning HVLP's ***key financial, employee relations, marketing, accounting, and legal policy, are made in, and directed from, Broomfield, Colorado***. 3-AA-675 (emphasis added.)

> Following removal, *Heggen* identified the Colorado Action as a related action.  3-AA-691.

### ii.    *Gibson*

On April 20, 2021, *Gibson* filed a collective and class action

complaint in California state court against Vail Resorts Management Co.

alleging violations of California law and an FLSA claim for unpaid

overtime.  2-AA-444-54.  *Gibson* designated the Colorado Action as a

"related case" at the time of filing.  2-AA-430-31.

### iii.    *The Heggen/Gibson Settlement*

On July 20, 2021, Vail Resorts Management removed *Gibson* to the

Eastern District of California on federal question grounds.  2-AA-468.  On

July 23, 2021, three days after *Gibson*'s removal, Vail and the *Gibson* and

*Heggen* plaintiffs executed a "Memorandum of Agreement designed to

bind them to the terms of a nationwide settlement encompassing all claims for alleged unpaid wages and any other alleged violation of state or federal law (statutory or common law)." 1-AA-214-215. No motion practice or other substantive litigation activity occurred in *Gibson* or *Heggen* prior to the settlement. 4-AA-856-859.

On August 12, 2021, *Gibson* and *Heggen* filed joint notices in the Eastern District that the parties anticipated filing a motion for preliminary approval "within 30 to 60 days." 4-AA-801. On August 16, 2021, the *Gibson* court ordered the preliminary approval motion be filed by October 15, 2021. 4-AA-969.

### 4.    The California State Court Actions

i.    *Hamilton I*

On July 8, 2021, *Hamilton I* filed a boilerplate putative class action complaint against HVLP in California state court alleging solely California Labor Code and Business and Professions Code claims on behalf of "meal period," "rest period," and "reimbursement" class of California employees. 4-AA-727-8.

ii.    *Hamilton II*

On August 9, 2021, more than ten months after the Colorado Action was filed, Hamilton filed another California state court complaint based on the same facts as *Hamilton I* with a single claim under California's Private Attorney General Act, California Labor Code section 2698, *et seq.* ("*Hamilton II*"). 4-AA-763-4.

iii.    Removal

On September 8, 2021, HVLP removed *Hamilton I* under CAFA (4-AA-739-54) and filed a notice of related case as to the Colorado Action. 4-AA-756-8. HVLP did not seek to remove or dismiss *Hamilton II*, and instead answered on October 7, 2021. 5-AA-1273.

iv.    Retreat to California State Court

On October 11, 2021, *Heggen/Gibson* requested an additional 14 days to file preliminary settlement approval papers (3-AA-563), which the court granted on October 13, 2021. 3-AA-571. However, on the new October 29, 2021 due-date, the parties filed a stipulation to stay the three Eastern District actions (*Heggen*; *Gibson*; *Hamilton I*) pending settlement approval in California state court in the last filed action, *Hamilton II*. On November 2, 2021, Appellants sought intervention. 4-

AA-787-840.  Without ruling on Appellant's motion, the Eastern District stayed *Heggen*, *Gibson*, and *Hamilton I*.  4-AA-780-85,841-846.

### 5.    California State Court Settlement Approval

In January, 2021 *Hamilton II* sought preliminary Settlement approval. 5-AA-1030-38.  On November 19, 2021, Appellants sought to intervene in *Hamilton II* to seek dismissal in deference to the earlier filed Colorado Action.  4-AA931-5AA-986.  On January 7, 2022, the California state court denied intervention, ruling that Appellants' interests were not practically impaired or impeded because they could opt out or object to the Settlement.   On January 28, 2022, the California state court granted preliminary Settlement approval, striking Appellants' objection for lack of standing.  5-AA-1030-39.

## B.    The District Court's Denial of Appellants' AWA Motion

On November 10, 2021, Appellants asked the District Court to enjoin the Settlement as an inadequate and collusive "reverse auction" settlement improperly calculated to extinguish the Colorado Action's broader and stronger claims and avoid the District Court's general jurisdiction. 2-AA-406-430.  At the time briefing closed on November 24, 2022, *Hamilton II* had not yet filed a preliminary approval motion.

Appellants understood at that time, however, that the Settlement consideration totaled $14,000,000—i.e., approximating HVLP's estimate of the total maximum recoverable damages in *Heggen*, which was brought on behalf of California employees only.  2-AA-420.  In addition, the Settlement would release the Colorado Action's FLSA collective and class claims ***only*** if the settling parties agreed to release claims under state laws other than California, notwithstanding that no named plaintiff in any of the underlying cases had asserted such claims and that Vail would not be subject to jurisdiction in California on any claim brought by or on behalf of persons who worked for Vail in other states—the vast bulk of the collective and class—absent Vail's consent.

On March 9, 2022, the Magistrate Judge entered the R&R, which held, *inter alia*, that "Plaintiffs fail to point to any facts to support the serious accusation that this is an abusive or collusive settlement and this Court takes umbrage at the insinuation that another federal or state judge would be so unethical as to permit such nefarious conduct."  5-AA-1087.  The Magistrate Judge also found that he did not need to determine whether the Colorado Action was "first filed" because, "[e]ither way, Plaintiffs arguments fail to warrant enjoining the settlement proceedings

occurring in the California state court . . . ." 5-AA-1090. In addition, the Magistrate Judge concluded that the AIA barred the requested relief. 5-AA-1090-92. Finally, the Magistrate Judge determined that "Plaintiffs have failed to demonstrate that they will be prejudiced by the settlement . . . and even if that were the case, that would be an issue for them to raise with the California state court." 5-AA-1092.

On March 23, 2022, Appellants objected to the R&R. 5-AA1103-1126. By that time, *Hamilton II*'s preliminary approval motion had been filed, which disclosed the amount of the Settlement ($13,100,000), the settlement class size (approximately 100,000), and that the settling parties had agreed that plaintiffs would file an amended complaint and release all claims under the FLSA and the laws of 15 states (in addition to California) at issue in the Complaint. 5AA-1030-39.

On June 27, 2022, the District Court overruled Appellants' objections, finding the "factual findings and legal application are not clearly erroneous or contrary to law." 5-AA-1188. The District Court also found "no precedent for the proposition that this federal court is empowered to undertake a review of a settlement agreement reached in a different court, before a different judge." (*Id*.). The District Court also

found that the Magistrate Judge's determination that no AIA exception applied was not contrary to law. 5-AA-1189-92. The District Court construed this Court' statement in *Hillman v. Webley*, 115 F.3d 1461, 1469 (10th Cir. 1997), that a district court "undoubtedly [has] authority under the All Writs Act to enjoin parties before it from pursuing conflicting litigation in state court" is limited to circumstances where a district court already issued a settlement order that a state court action threatened to frustrate. 5-AA-1190. Finally, the District Court ignored evidence and misconstrued "[t]he allegedly collusive behavior" that other courts hold is strong indicia of misconduct as "simply Plaintiffs' disagreement" with the Settlement. 5-AA-1187.

## SUMMARY OF ARGUMENT

The R&R and Order both erred in finding the evidence did not show the Settlement was collusive, inadequate or a reverse auction.

The Settlement and the circumstances surrounding it are precisely those against which courts and commentators alike have cautioned are indicia of a "reverse auction" and "collusive" or "sham" settlement. *See, e.g.*, *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 282-83 (7th Cir. 2002) (a "reverse auction" is when a "defendant in a series of class actions picks the most ineffectual [] lawyers to negotiate a settlement in the hope that the district court will approve a weak settlement that will preclude other claims against the defendant"); Madeline M. Xu, "*Form, Substance, and Rule 23: The Applicability of the Federal Rules of Evidence to Class Certification*," 95 N.Y.U. L. Rev. 1561, 1585, 1587 (2020) (cautioning against settlements that include "not only those claims brought by the class, but also claims that were not raised at all" and noting the absence of jurisdiction over such claims "poses the greatest risk to the right of absent class members, as their choses in action are negotiated away even where their representatives have no bargaining power").

Both the R&R and the Order failed to address Appellants' evidence showing the settlement was a collusive sham, including, for example, the parties' forum shopping and other gamesmanship.  Specifically, Vail and the California Actions plaintiffs first assured the District of Colorado that the settlement would be "rigorously scrutinized" by another federal court and then inexplicably submitted the settlement for approval by a California state court in a different action that had not even been filed when the settlement was negotiated and finalized.   The R&R and Order also ignored Vail's own admissions.  For example, the policies at issue were formulated and implemented at Vail's Colorado headquarters, which supports Appellant's argument that the litigation and resolution of the FLSA and other claims is properly venued in the District of Colorado. 3-AA-675.  Similarly, the R&R and Order do not address Vail's admissions showing the settlement amount is grossly inadequate relative to range of potential damages in the Colorado Action (3-AA-614) and Vail was able to extract a significant discount because of jurisdictional and substantive infirmities in the California Actions that are not present in the Colorado Action.

Only after the settlement was executed, did Vail belatedly comply with its Colorado Local Civil Rule 3.2 obligation to notify the federal court and Appellants of the related California Actions. Vail and its confederates then engaged in gamesmanship, first securing a stay of the Colorado Action by assuring the District Court that the settlement would be subject to another federal court's "rigorous review" but ultimately submitting the settlement for approval in a remote California state court, unfamiliar with the controversy and no jurisdiction over the FLSA claims or nationwide class claims.

In response to Vail's duplicity, Appellants asked the District Court to exercise its AWA authority to enjoin Vail from consummating the Settlement. 2-AA-406 – 4-AA-859. On March 9, 2022, the Magistrate Judge issued an R&R that committed numerous errors of law and fact. 5-AA-1083-93. The District Court then compounded and added to those defects in erroneously adopting the R&R. 5-AA-1185-94.

***First***, this litigation belongs in the District of Colorado. Appellants' first filed complaint alleging federal FLSA claims and class action claims subject to CAFA was brought in the district where Vail is headquartered and is subject to general jurisdiction, and the challenged policies were

formulated and implemented.  Appellants' action is the most advanced and actively litigated.  There is no question that the District of Colorado has by far the strongest interest in the claims, particularly relative to a remote California state court.

*Second*, under the AWA, the District Court is empowered to enjoin conflicting or abusive litigation in another court, particularly in later-filed actions involving overlapping parties and issues.  *Chic. Pneumatic Tool Co. v. Hughes Tool Co.*, 180 F.2d 97, 101 (10th Cir. 1950); *Hillman v. Webley*, 115 F.3d 1461, 1469 (10th Cir. 1997).  The AWA authorizes courts to prevent parties from "pursuing an inadequate or collusive settlement in state courts which would release the apparently stronger claims in the instant case."  *Guerra v. Texaco Exploration & Prod., Inc.*, 48 F. Supp. 2d 699, 704 (S.D. Tex. 1998).  The AWA also authorizes the district court to enjoin Vail from consummating and submitting its proposed settlement for approval in another federal or state court.  *See, e.g.*, *In re Managed Care Litig.*, 236 F. Supp. 2d 1336, 1342-43 (S.D. Fla. 2002); *In re Checking Account Overdraft Litig.*, 859 F. Supp. 2d 1313, 1325 (S.D. Fla. 2012).

***Finally***, whether a party has circumvented rules or committed improprieties is relevant when considering an injunction under the AWA. *See*, *e.g.*, *Span-Eng Assoc. v. Weidner*, 771 F.2d 464, 470 (10th Cir. 1985). Specifically, Local Rule 3.2(c)(1) required Vail to disclose any related action "pending in this or any federal, state, or foreign jurisdiction" when it first appears in such actions.  But Vail deliberately circumvented Local Rule 3.2 and delayed disclosing the related and later-filed California Actions for many months until after it had procured a "settlement" from those friendly plaintiffs.

Vail further obtained a stay of the Colorado Action by falsely assuring the District Court that the Settlement would be subject to a "rigorous [] approval process" in another federal court.   But after obtaining that stay, Vail then stayed the related federal actions to seek approval in California state court. Unlike the District of Colorado, the California state court has virtually no connection to the challenged conduct or familiarity with the claims, facts, and issues in dispute.  Nor would the California state court have jurisdiction absent Vail's consent.

The R&R denying Appellants' AWA Motion misapplied the law and the facts.  Appellants timely objected, arguing, among other things, the

District of Colorado, which has general jurisdiction over Vail, should retain its "priority to consider the case." 5-AA-1108 (citing *Hospah Coal. v. Chaco Energy*, 673 F.2d 1161, 1163 (10th Cir. 1982)). Instead, the R&R improperly deferred to the California actions essentially giving them priority. 5-AA-1108; *see also Wakaya Perfection v. Youngevity*, 910 F.3d 1118, 1124 (10th Cir. 2018). The R&R determined that the district court's AWA authority was precluded by the AIA. 5-AA-1090-92. This was in error because Appellants were not asking to enjoin a state court proceeding and even if the AIA applies, the injunction falls within the "expressly authorized by [] Congress," and "necessary in aid of jurisdiction" exceptions. 28 U.S.C. § 2283. The removal statute is an express authorization to stay state court proceedings and therefore, injunctions in removed cases come within the first exception to the AIA. *Vendo Co. v. Lektro–Vend Corp.*, 433 U.S. 623, 640 (1977). *Hamilton II* was improperly filed in state court by the same plaintiff based on the same facts as *Hamilton I* which was removed to federal court. Therefore, *Hamilton II*, which improperly split its claims, subverts federal removal jurisdiction and may be enjoined under the "expressly authorized" exception.

Appellants also argued the R&R erroneously suggested the District Court may abstain from exercising jurisdiction in favor of the California court under the Colorado River Doctrine. 5-AA-1088. As the Supreme Court explained, the "doctrine of abstention . . . is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy" and is justified "only in the exceptional circumstances where the order to the parties to repair to the State court would clearly serve an important countervailing interest." *Colorado River Water District v. United States*, 424 U.S. 800, 813 (1976). However, none of the Colorado River factors were present. Rather, all relevant factors compelled the conclusion that priority to the state court was improper. Application of Colorado River Doctrine is mandatory and the court must make "findings about the parallel nature of the state and federal proceedings and the balance of the factors on the record." *Fox v. Maulding*, 16 F.3d 1079, 1080, 1082 (10th Cir. 1994) ). The R&R's and District Court's failure to do so is reversible error. *Wakaya Perfection v. Youngevity Int'l*, 910 F.3d 1118, 1121, 1123-24 (10th Cir. 2018); *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983) (same). The District Court

overruled Appellants' objection and adopted the R&R, thus necessitating this appeal.

## STANDARD OF REVIEW

### A.     The Order is Subject to *De Novo* Review

"Because the disposition of this appeal turns on issues of law," this Court's "standard of review in considering the propriety of all of the district court judges' decisions [] is, as a practical matter, *de novo*." *High Desert Relief, Inc. v. U.S.*, 917 F.3d 1170, 1179 (10th Cir. 2019). "When *de novo* review is compelled, no form of appellate deference is acceptable." *Salve Regina College v. Russell*, 499 U.S. 225, 238 (1991).

### B.     The District Court's Determination of the Standard in Reviewing the R&R is Subject to De Novo Review

On appeal, the District Court's decision to use the "clearly erroneous or contrary to law" standard in reviewing the R&R is "subject to *de novo* review." *Birch v. Polaris Indus., Inc.*, 812 F.3d 1238, 1246 (10th Cir. 2015).

### C.     All Writs Act

The standard for reviewing whether the District Court erred in denying Appellant's motion for permanent injunction under the AWA is *de novo*. *In re Fundamental Long Term Care, Inc.*, 873 F.3d 1325, 1335

21

(11th Cir. 2017) (citing *SFM Holdings, Ltd. v. Banc of Am. Secs., LLC*, 764 F.3d 1327, 1334 (11th Cir. 2014)).

## D.    Anti-Injunction Act

The standard for reviewing whether the District Court erred in denying Appellant's motion for permanent injunction under the AIA is *de novo.  Ambort v. United States*, 392 F.3d 1138, 1140 (10th Cir.2004).

## E.    Colorado River Abstention

The Tenth Circuit reviews "district court decisions regarding deferral under the Colorado River Doctrine for abuse of discretion." *Rienhardt v. Kelly*, 164 F.3d 1296, 1302 (10th Cir. 1999) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 19 (1983).  More specifically, under *Colorado River*, the "decision whether to defer to the state courts is necessarily left to the discretion of the district court in the first instance.  Yet to say that the district court has discretion is not to say that its decision is unreviewable; such discretion must be exercised under [] *Colorado River's* exceptional-circumstances test." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 19, (1983).  Thus, even with the deferential standard of review, "[o]nly the clearest of justifications merits abstention." *Jackson-Platts v.GE Cap. Corp.*, 727 F.3d 1127, 1140 (11th Cir. 2013) (quotation marks omitted).

"Though decisions to abstain are purportedly reviewed under a deferential abuse of discretion standard, an examination of the standard as actually applied [] amounts to *de novo* review with no discretion whatsoever left in the hands of the district court."   Gallogly, Owen, *Colorado River Abstention: A Practical Reassessment*, 106 Virginia Law Review, 215 (May 1, 2019); accord *Novak v. Federspiel*, No. 21-1722, 2022 WL 3046973, at *2 (6th Cir. Aug. 2, 2022) ("We review a district court's decision to abstain *de novo*."); *RSM Richter, Inc. v. Behr Am., Inc.*, 729 F.3d 553, 557 (6th Cir. 2013)(*De novo* review ); *U.S. v. State Water Res. Control Bd.*, 988 F.3d 1194, 1202 (9th Cir. 2021) (*De novo* review ).

Even if an abuse of discretion standard were applied, the Order must be reversed because the District Court abused its discretion and made an error of law.  *Koon v. U.S.*, 518 U.S. 81, 100 (1996) ("A district court by definition abuses its discretion when it makes an error of law"); *U.S. v. Lozado*, 776 F.3d 1119, 1124 (10th Cir. 2015) (same); *Wyandotte Nation v. Sebelius*, 443 F.3d 1247, 1252 (10th Cir. 2006)(same); *Law Co. v. Mohawk Constr. Supply Co.*, 577 F.3d 1164, 1169 (10th Cir. 2009) (same).  Thus, even in the context of the abuse of discretion standard, the Tenth Circuit reviews "subsidiary legal questions *de novo*."  *Johnson v.*

*Spencer*, 950 F.3d 680, 701 (10th Cir. 2020). "The district court abuses its discretion if it 'commits a legal error,' if it 'relies on clearly erroneous factual findings,' or if 'there is no rational basis in the evidence for its ruling.'" *Ute Indian Tribe of Uintah & Ouray Reservation v. Lawrence*, 22 F.4th 892, 899 (10th Cir. 2022).

# ARGUMENT

## A.    The District Court Erred by Not Reviewing the R&R *De Novo*

The District Court wrongly concluded that the R&R was not dispositive and, consequently, would only "modify or set aside any part of the order that is clearly erroneous or is contrary to law." 5-AA-1186. Without explanation, the District Court also claimed that Appellants "misstated" the standard of review (5-AA-1189n.1), presumably because Appellants argued (5-AA-1112) that since "the applicability of the [AIA] calls for a legal conclusion," the District Court must conduct a *de novo* review of the Magistrate's application of the AIA.[1]

In any event, the District Court failed to review the R&R *de novo* and improperly deferred to the Magistrate.  For example, while the District Court recognized that at "various points in their motion and reply" Appellants contended that all three exceptions to the AIA applied, the court would not "indulge Plaintiffs in a review of arguments" the

---

[1] The District Court's error is perplexing because the R&R cited to Fed. R. Civ. P. 72(b) and recognized that the motion was dispositive and subject to *de novo* review.  5-AA-1083-84n.2. ("A party's failure to file []written objections [] may bar the party from a *de nov*o determination by the District Judge.")

25

court incorrectly concluded were "not properly raised before Judge Gallagher." 5-AA-1189. As explained below, all arguments were properly raised. Even if the AIA exceptions constituted new arguments on reply, the District Court had a constitutional obligation to consider all arguments *de novo. Peretz v. United States*, 501 U.S. 923, 939 (1991); *see also Ocelot Oil Corp. v. Sparrow Industries*, 847 F.2d 1458, 1464 (10th Cir. 1988)* (same). Because the District Court was "so constrained by the assumption that the magistrate's order must be affirmed absent clear error," the Order must be reversed. *Ocelot*, 847 F.2d at 1464.

The "relevant statutory provisions authorizing a district court to refer matters to a magistrate and establishing the mode of review of the magistrate's actions are in 28 U.S.C. §636(b)(1)." *United States v. Raddatz*, 447 U.S. 667, 673 (1980). Section 636(b)(1)(A) provides a "magistrate judge [may] hear and determine any pretrial matter[], ***except a motion for injunctive relief***," and seven other dispositive motions which are "covered by §636(b)(1)(B)." *Raddatz*, 447 U.S. at 673.

Section 636(b)(1)(B) provides a magistrate may submit to a judge proposed findings of fact and recommendations for "any motion excepted in subparagraph (A)" such as ***a motion for injunctive relief***. Section

636(b)(1)(C) explains that a judge "shall make a *de novo* determination []to which objection is made. [] The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions." 28 U.S.C. § 636(b)(1)(C). Thus, it "should be clear that on these dispositive motions, the statute calls for a *de novo* determination." *Raddatz*, 447 U.S. at 674; *see also Peretz v. U.S.*, 501 U.S. 923, 939 (1991) (same).

In *Ocelot*, this Court explained its interpretation of Rule 72 and 28 U.S.C. Section 636 was "further confirmed by the requirement that [courts] read section 636 so as to avoid constitutional problems [] [which] requires that Article III judges exercise final decision making authority [and] Section 636 may not be read to confer more power on magistrates than the Constitution permits." *Ocelot*, 847 F.2d at 1463. Therefore, the District Court was required to conduct a *de novo* review which entails making "an independent determination of the issues" without giving "any special weight to the prior determination." *Id*. at 1464. The District Court erred in failing to conduct a *de novo* review.

The District Court wrongly concluded that Appellants "twice misstated the standard of review. (See Doc. 118 at 1, Doc. 123 at 5.)." 5-

AA-1189n.1. With respect to the standard of review in Document 123, as discussed above, the District Court based its decision on the wrong standard of review. Concerning the standard of review in Document 118, Appellants cannot discern the court's perceived error. In the court's order overruling Appellants' objection (5-AA-1175-84) the court did not mention an error in the standard of review and in ECF 143, the court did not describe the error. 5-AA-1189n.1. Since the court and Appellants cited most of the same cases, Appellants respectfully submit that they did not misstate the standard. *Compare* 5-AA-1065 with 5-AA-1176.

Perhaps the District Court misunderstood the clearly erroneous standard and mistakenly disagreed with Appellants' assertion that matters of law are reviewed *de novo*.[2]  5-AA-1065 *citing  Equal Emp't Opportunity Comm'n v. City of Long Branch*, 866 F.3d 93, 99 (3d Cir. 2017).

---

[2] The District Court cited *Residences at Olde Town Square Ass'n v. Travelers Cas. Ins. Co. of Am.*, 413 F. Supp. 3d 1070, 1072 (D. Colo. 2019), which states that the "'contrary to law' standard permits 'plenary review as to matters of law,'" but plenary and *de novo* are the same standard. *See*, *e.g.*, *City of Cambridge Ret. Sys. v. Ersek*, 921 F.3d 912, 917 (10th Cir. 2019).

But, contrary to the District Court's interpretation, Appellants' recitation of the clearly erroneous standard in Document 118 was correct. When reviewing *factual findings* of a District Court on a non-dispositive motion, a Court of Appeals is bound by the "clearly erroneous" standard of Rule 52(a). "That Rule recognizes and rests upon the unique opportunity afforded the trial court judge to evaluate the credibility of witnesses and to weigh the evidence." *Inwood Labs. v. Ives Labs.*, 456 U.S. 844, 855 (1982). Because of the deference to the trial judge, "unless an appellate court is left with the 'definite and firm conviction that a mistake has been committed,' it must accept the trial court's findings." *Id.* at 855 (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)). But, where a story "may be so internally inconsistent or implausible on its face," a court may "find clear error even in a finding purportedly based on a credibility determination." *Anderson v. Bessemer City*, 470 U.S. 564, 575 (1985). However, "if the trial court bases its findings upon a mistaken impression of applicable legal principles, the reviewing court is not bound by the clearly erroneous standard." *Inwood Labs*, 456 U.S. at 855 n.15.

Thus, the case for deference vanishes when a court's conclusion is infected by legal error.  As a result, when a trial court "premise[s] its ultimate finding[] on an erroneous interpretation of the standard to be applied," appellate  courts do not use clear error review. *U.S. v. Parke, Davis Co.*, 362 U.S. 29, 44 (1960).  Instead, appellate courts "treat the trial court's conclusion as a question of law." *Vinick v. U.S.*, 205 F.3d 1, 7 (1st Cir. 2000) (citing *United States v. Singer Mfg. Co.*, 374 U.S. 174, 194 n. 9 (1963)).

Therefore, in the Tenth Circuit, when, as here, a lower court's factual findings are premised on improper legal standards or on proper ones improperly applied, "they are not entitled to the protection of the clearly erroneous standard, but are subject to *de novo* review."  *In re Kretzinger*, 103 F.3d 943, 946 (10th Cir. 1996).

**B.    The District Court Committed Reversible Error by Concluding No Facts Supported Appellants' Contention that the Settlement Was Collusive**

The Magistrate erroneously concluded that Appellants failed to "point to any facts to support the serious accusation that this is an abusive or collusive settlement" and the Court took "umbrage at the insinuation that another federal or state judge would be so unethical as

30

to permit such nefarious conduct." 5-AA-1087. The Magistrate reached this conclusion, which was adopted by the District Court, by ignoring Appellants' extensive evidence of improprieties—the very same misconduct that numerous courts and scholars find are indicia of collusion and a "reverse auction" settlement. Without any basis, the District Court concluded the "allegedly collusive behavior is for the most part simply Plaintiffs' disagreement with the settlement agreement reached in the other cases" and assumed without basis that the Settlement was "likely the product of good faith negotiations and decision-making rather than anything nefarious." 5-AA-1187.

The District Court ignored Appellants' argument that the litigation belongs in the District of Colorado where Vail is headquartered and subject to general jurisdiction, and where the challenged policies were formulated and implemented. A series of Supreme Court opinions[3] has made it clear that nationwide class or collective actions must be filed and litigated where the defendant is subject to general jurisdiction, that is, where the company is headquartered or incorporated in order to curb

---

[3] *See e.g. Goodyear Dunlop Tires Oper. v. Brown*, 564 U.S. 915 (2011); *Daimler AG v. Bauman*, 571 U.S. 117 (2014); *Bristol-Myers Squibb Co. v. Superior Court of Cal.*, 137 S. Ct. 1773 (2017).

"forum shopping" or "litigation tourism."  Philip S. Goldberg et al., *The U.S. Supreme Court's Personal Jurisdiction Paradigm Shift to End Litigation Tourism*, 14 Duke Journal of Constitutional Law & Public Policy 51-52 (2019); Daniel Wilf-Townsend, *Class Action Boundaries*, 90 Fordham L. Rev. 1611, 1663 (2022) (same).[4]

Specifically, defendants can manipulate their use or non-use of jurisdictional defenses in foreign venued actions to leverage sweetheart deals with plaintiffs who are vulnerable to such defenses.  *See* Wilf-Townsend, *Class Action Boundaries*, 90 Fordham L. Rev. at 1662.  These dynamics incentivize defendants to "engage in a 'reverse auction' in which the defendant consents to nationwide jurisdiction in whatever jurisdiction is most favorable to the defendant."  *Id.* (footnote omitted).

Pre-certification class and collective settlements merit close scrutiny and a district court "abuses its discretion if it fails to apply 'an even higher level of scrutiny for evidence of collusion or other conflicts of

---

[4] With respect to FLSA claims specifically, the Sixth and Eighth Circuits recently held that employers are not subject to nationwide jurisdiction in cases brought outside of their home forum.  *See Canaday v. Anthem Cos.*, 9 F.4th 392, 400-01 (6th Cir. 2021); *Vallone v. The CJS Solutions Group, LLC*, 9 F.4th 861 (8th Cir. 2021).

interest than is ordinarily required under Rule 23(e).'" *Roes*, *1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1043 (9th Cir. 2019). The court must look for "'subtle signs that class counsel have allowed pursuit of their own self-interests . . . to infect the negotiations.'" *Id.* (quoting *Allen*, 787 F.3d at 1223-24).

Numerous courts have rejected settlements where, as here, there are "indicia of collusion" or "red flags" indicating a potential reverse auction. *Kim v. Allison*, 8 F.4th 1170, 1179–80 (9th Cir. 2021) (pre-certification class settlement approval reversed because it "failed to take the required hard look at indicia of collusion"); *In re Cmty. Bank of N. Virginia*, 418 F.3d 277, 307 (3d Cir. 2005) (Expedited settlements of "questionable value" consummated without "significant discovery" that are "accompanied by an enormous legal fee" deserve special scrutiny); *Ross v. Convergent Outsourcing, Inc.*, 323 F.R.D. 656, 660-61 (D. Colo. 2018) (preliminary approval denied where "the nature of the proposed settlement raises a red flag as to whether it is the product of a so-called 'reverse auction'"); *Cullan & Cullan LLC v. M-Qube, Inc.*, No. 8:13CV172, 2014 WL 347034, at *9-*10 (D. Neb. Jan. 30, 2014) (same) *Gray v. CJS*

*Sols. Grp., LLC*, No. cv-19-1008 (PAM/DTS), 2020 WL 4476440, at \*4 (D. Minn. Aug. 4, 2020) (same).[5]

Appellants cited the very same hallmarks, which confirmed the Settlement as a collusive end run around the Colorado Action's broader and stronger claims:

***First,*** Vail engaged in no holds barred litigation with Appellants; yet, swiftly settled the California Actions without any substantive litigation activity. To achieve the Settlement, the California Actions plaintiffs had to substantively broaden their claims in order to bar the Colorado Action FLSA and state law claims.

***Second,*** all three *Heggen* and *Gibson* plaintiffs worked in California and were pursuing California state law claims. Only *Gibson* asserted a lone FLSA count for non-payment of overtime. 2-AA-444-54.

---

[5] The District Court concluded that "Plaintiffs provide no precedent for the proposition that this federal court is empowered to undertake a review of a settlement agreement reached in a different court, before a different judge." 5-AA-1187. But Appellants did not ask the court to review the Settlement under Rule 23. Instead, Plaintiffs were asking the court to examine the indicia and circumstantial evidence of collusion that were well-recognized in these cases. Therefore, contrary to the court's assertion, these cases are not inapposite. *See* 5-AA-1188.

Yet, the Settlement purports to resolve all claims asserted in the Colorado Action, not just the California Actions' limited claims.

***Third***, courts are skeptical of defendants' attempts to settle parallel litigation with plaintiffs' counsel who, as here, are in a "precarious position[,]" finding that it could give rise to a perception of improper dealing. *See Figueroa v. Sharper Image Corp.*, 517 F. Supp. 2d 1292, 1321 (S.D. Fla. 2007).

***Fourth,*** Vail engaged in procedural gamesmanship and deception. Vail repeatedly violated the District of Colorado's Local Rules by failing to timely provide notice of the California Actions. Vail removed *Hamilton I* and *Gibson* to the Eastern District but not *Hamilton II* to leave all options open. 4-AA-739-54; 5-AA-1273. Just four days after removing *Gibson*, on July 23, 2021, Vail and the *Gibson* and *Heggen* plaintiffs "executed a Memorandum of Agreement designed to bind them to the terms of a nationwide settlement encompassing all claims for alleged unpaid wages and any other alleged violation of state or federal law (statutory or common law)." 1-AA-214-215.

***Finally,*** after signing the MOU, on August 12, 2021, Vail belatedly filed its required related case notice in the District of Colorado, disclosing for the first time the California Actions (other than *Hamilton II*). 1-AA-205-08. Vail also moved to temporarily stay the Colorado Action in order to present its settlement to the Eastern District of California for "rigorous" review and approval. Vail and the California Actions plaintiffs also represented to the Eastern District of California that they would submit their settlement to that federal court. 1-AA-209-2-AA-233. However, on October 29, 2021, Vail and the California Actions plaintiffs stipulated to a stay of the three Eastern District actions in order to submit their settlement to the El Dorado County Superior Court in the last-filed *Hamilton II*. 4-AA-780-85.

The Colorado Local Rules provide that a "party to a case shall file a notice identifying all cases pending in this or any other federal, state, or foreign jurisdiction that are related to the case." D.C. COLO. LCivR 3.2. A "party shall file the required notice at the time of its first appearance or the filing of its first pleading or document [and] shall file promptly a

36

supplemental notice of any change in the information required under this rule." *Id.* [6]

The California Actions are "related" under Rule 3.2: they share common parties (i.e., overlapping collective/class members and defendants with a common corporate parent); the claims "revolve around" Vail's employment practices; and Vail has raised common defenses. *Malcolm v. Reynolds Polymer Tech., Inc.*, No. 17-CV-2835-WJM-KLM, 2018 WL 6695921, at *5 (D. Colo. Dec. 20, 2018); *Masciotra v. Vertafore, Inc.,* No. 20-CV-3603-WJM-NYW, 2021 WL 1720860, at *2 (D. Colo. Apr. 30, 2021) (finding case related and applying first filed rule where "the subject matter of the litigation is substantially the same."). Vail identified the Colorado Action as related to the California Actions under the analogous rules of those courts.  3-AA-691.

Under Local Rule 3.2, Vail was required to file a notice of related case for *Heggen* when counsel appeared on January 5, 2021 and for

---

[6]   The District Court also agreed "with Judge Gallagher's conclusion that that Local Rule 3.2(c) 'does not permit this Court to enjoin the California cases from proceeding.'"  5-AA-1188.  But both the Magistrate and the District Judge misconstrued Appellants' argument that Vail should be enjoined under the AWA, not Rule 3.2. Violation of the Local Rule was but one piece of evidence that Vail improperly avoided the District Court's general jurisdiction to engineer a reverse auction settlement.

*Gibson* on April 20, 2021. 1-AA-203-08.  Vail did not file the required notice until August 12, 2021. 1-AA-205-08. Construing Rule 3-2 any other way in the class/collective action context would make no sense given the evident purpose of the rule to prevent the undisclosed simultaneous litigation of overlapping actions potentially bearing on the first filed Colorado Action pending in the District Court.

Thus, Vail repeatedly violated the District Court's rules, and its solemn duty of candor.  These rules are not mere technical formalities. The requirement to give notice to the first filed case of subsequently filed related cases is rooted in strong policy concerns for fairness to the parties, judicial economy, avoidance of piecemeal litigation, and the just, speedy and inexpensive resolution of cases.  Vail's gamesmanship caused the exact problems these rules avoid.  *Nowlan v. Cinemark, USA, Inc.*, 2012 U.S. Dist. LEXIS 136235, at *1 (D. Colo. Sep. 24, 2012); see also *PTW Energy Servs., Inc. v. Carriere*, No. 19-CV-01436-REB-NYW, 2019 WL 3996874, at *11 (D. Colo. Aug. 23, 2019) (The "failure to file the required notice suggests that Plaintiff is attempting to avoid scrutiny"); *Vaqueria Tes Monjitas, Inc. v. Rivera Cubano*, 230 F.R.D. 278, 279 (D.P.R. 2005) (collecting cases for the proposition that courts have "repeatedly

recognized the troubling practice of judge-shopping"); *Landau v. Virdian Energy PA*, LLC, 2017 WL 3581323, at *3 (E.D. Pa. April 3, 2017 (same).

By contrast, a party is entitled to presume the absence of a Rule 3.2 notice indicates that there are no related cases. *RV Horizons, Inc. v. Smith,* No. 1:18-CV-02780-NYW, 2019 WL 1077366, at *20 (D. Colo. Mar. 7, 2019). Had Vail timely complied with its obligations, Appellants could have sought to intervene prior to the settlement or take other action under the first filed rule. *See O'Donnell v. Ford Motor Co.*, 2021 U.S. Dist. LEXIS 91795, at *4-5 (C.D. Cal. May 12, 2021) (party's failure to provide notice of related case "waste[d] [] scarce judicial resources").

In sum, the Settlement's timing, procedural machinations and legerdemain, and disparate bargaining positions suggest a collusive end run around the Colorado Action's broader and stronger claims. Courts and commentators alike have long recognized that "abusive or collusive settlement[s]" have been improperly approved in similar circumstances. *See e.g.* Andrew, S. Weinstein, *Avoiding the Race to Res Judicata: Federal Antisuit Injunctions of Competing State Class Actions,* 75 NYU Law Rev. 1085, 1091-93, 1101 (2000).

Commentators also recognize that complex interstate class actions belong in federal court. "To begin with, federal courts have institutional advantages over state courts. Their staffs are better equipped to deal with complex litigation in an efficient manner. They also have more experience in general with complex litigation and the difficult choice of law issues often presented. Moreover, federal courts employ more rigorous certification and settlement approval procedures and are often more vigilant in protecting the rights of class members." *Id*. at 1112-13.

Defendants, therefore, often "make a 'low ball' offer in parallel state court proceedings in an effort to settle the class claim for far less than it is worth, which creates a "'reverse auction,' pitting the various class counsel against one another and agreeing to settle with the lawyer willing to accept the lowest bid on behalf of the class." Rhonda Wasserman, *Dueling Class Actions*, 80 Boston University Law Review 461, 473 (2000). Since "class counsel in dueling class actions are under such enormous pressure to settle with the defendant quickly, they often begin negotiations before they have undertaken substantial discovery and therefore are not well positioned to assess the strength and value of the class's claim. *Id*. at 474-75. This is exactly what happened here.

Finally, "a state court presented with a settlement in a federal/state dueling class action context will not receive the information necessary to assess the fairness of the settlement from class counsel or the defendant and will not be able to piece it together from prior litigation before the court. Nor will the state court have the background experience with the exclusive federal claims that a federal judge might have, which would prove useful in assessing the fairness of a settlement that releases such claims." *Id*. at 481.

## C.    The District Court Erred in Failing to Enjoin Vail From Consummating The Sham California Actions Settlement

The AWA provides that courts "may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). In particular, the AWA empowers a district court to enjoin conflicting or abusive litigation in other courts. *Chicago Pneumatic Tool Co. v. Hughes Tool Co.*, 180 F.2d 97, 101 (10th Cir. 1950); *O'Hare International Bank v. Lambert*, 459 F.2d 328, 331 (10th Cir. 1972) (same); *Hillman v. Webley*, 115 F.3d 1461, 1469 (10th Cir. 1997) (same).

The District Court should have overruled the R&R and enjoined Vail's sham settlement. Litigation and any settlement of Appellants'

nationwide class and FLSA collective claims against Vail belongs in the District of Colorado under established judicial and equitable principles: Appellants' first filed action was brought in the district where Vail is headquartered and is subject to general jurisdiction, and where the challenged policies were formulated and implemented; and there is no question that the District Court has by far the strongest interest in the claims and subject matter of the litigation, particularly relative to the remote California state court.

## D.    The District Court Erred in Finding the AIA Precludes Enjoining Vail's Sham Settlement

The District Court erroneously concluded that Appellants' requested AWA injunction was barred by the AIA's prohibition against "an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."  28 U.S.C. § 2283. Appellants' motion asked the District Court only to enjoin Vail from submitting to a state court a collusive reverse auction settlement designed to extinguish the federal Colorado Action, *not* to "stay proceedings in a State court."  Accordingly, the AIA by its own terms was inapplicable.

An injunction against settlement does not "stay proceedings." Indeed, this Court has held that the AWA empowers a district court to enjoin a party under analogous circumstances "from pursuing conflicting litigation in the state court." *Hillman*, 115 F.3d at 1469 (approved by *Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 31(2002)); *see also U.S. v. New York Tel. Co.*, 434 U.S. 159, 174 (1977) (AWA authorizes a federal court to issue equitable orders including to non-parties and "even those who have not taken any affirmative action to hinder justice.") (internal citations omitted).

This Court's *Hillman* decision has been influential. For example, in *In re Lease Oil Antitrust Litig. No. II*, the Southern District of Texas enjoined the parties from pursuing an inadequate or collusive settlement in state court, "which would release the apparently stronger claims" in the federal case. 48 F. Supp. 2d 699 (S.D. Tex. 1998) (citing *Hillman*). The court reasoned that to "allow these federal claims to be 'hijacked' by a global settlement in state court[] would effectively destroy those federal rights and the federal procedures designed to safeguard them and to enable their orderly resolution." *Id*. at 703. The same facts inferring the *In re Lease Oil* settlement's improprieties were present here. For

example, as here, the first-filed federal action alleged stronger federal Sherman Act claims. *Id.* at 701. Months later, as in this action, different plaintiffs filed a copycat class action in state court alleging similar facts and violations state antitrust laws. *Id.* Like here, the state court plaintiffs quickly agreed to a global settlement agreement without substantial litigation activity, which released all claims—both state and federal—for a nationwide class. *Id.*

The court found the "very fact that the claims are quite possibly weaker [] renders the state court case prone to an inadequate, or possibly even collusive, settlement: since the plaintiffs in [] state court are in a relatively weak bargaining position, those plaintiffs might be motivated to accept a settlement which reflects only the value of their lesser claims, rather than the value of the exclusive federal claims." *Id.* at 702. "For this simple reason, it has been recognized that, when there are parallel federal and state cases, '[i]f the federal claims are stronger than the state claims, a global settlement in state court is not proper. The dangers of a 'hijacking' of the federal claims are too high, and the state's interest is too low, to justify state court approval of a global settlement that is opposed by the federal plaintiff.'" 48 F. Supp. 2d at 703 *quoting* Marcel

Kahan and Linda Silberman, *Matsushita and Beyond: The Role of State Courts in Class Actions Involving Exclusive Federal Claims*, 1996 Supreme Court Rev. 219, 260–61 (1996).

Notwithstanding the AIA, several other courts have acknowledged that an AWA injunction that could preclude a state court action may be appropriate based only on the ***possibility*** that the defendants would attempt to reach an inadequate or collusive settlement in the state court proceeding. *Levin v. HSBC Bank, N.A.*, 99 F. Supp. 3d 288, 301 (E.D.N.Y. 2015) ("The Court could enjoin Park from pursuing preliminary approval of the proposed nationwide class action settlement in the State Court Action irrespective of the fact that he is not a party to the MDL or the consolidated proposed class action in this Court"); *In re Managed Care Litig.*, 236 F. Supp. 2d 1336 (S.D. Fla. 2002) (a federal court "cannot turn a blind eye to [a party's] underhanded maneuvers . . . in an obvious attempt to avoid [federal] jurisdiction); *In re Checking Acct. Overdraft Litig.*, 859 F. Supp. 2d 1313, 1322 (S.D. Fla. 2012) (enjoining state court settlement in later-filed "copycat case" that would "deprive [the federal

court] of its ability to adjudicate the long-standing class claims" in the first-filed case).[7]

## E. The District Court Committed Reversible Error by Not Addressing Appellants' Argument that an Injunction Was Proper Under the "Authorized by Act of Congress" Exception

The District Court erred by misconstruing Appellants' argument that an injunction was proper under the authorized by Congress exception to the AIA as a new argument improperly raised on reply. 5-AA-1189. The court explained that at "various points in their motion and reply, Plaintiffs contend that all three exceptions apply." 5-AA-1189. The R&R, however, only addressed the "second and third exceptions." 5-AA-1189. The District Court excused this failure because the Magistrate "did not have to discuss an argument raised only in the reply." 5-AA-1189. Compounding this error, the District Court refused to "indulge Plaintiffs in a review of arguments not properly raised before Judge Gallagher." 5-AA-1189. This was error and the Order should be reversed on this basis alone.

---

[7] *Tooele Cnty. v. United States*, 820 F.3d 1183, 1185 (10th Cir. 2016) is inapposite because, among other reasons, the Utah officials asked the federal court to enjoin the Wilderness Alliance from ***prosecuting the state-court action***.

In *Beaudry*, incompletely quoted in the Order, the Tenth Circuit explained that "[a]lthough this court generally does not review issues raised for the first time in a reply brief, *Stump v. Gates*, 211 F.3d 527, 533 (10th Cir. 2000), ***we make an exception when the new issue argued in the reply brief is offered in response to an argument raised in the appellee's brief*** . . . ." *Beaudry v. Corrections Corp. of America*, 331 F.3d 1164, 1166 n.3 (10th Cir. 2003). These are the exact circumstances presented here. Appellants did not raise a ***new*** argument on reply. Appellants argued in response to Vail's argument that the district court was precluded from issuing an injunction by the AIA, that even if the AIA applied, the injunction was proper under two exceptions. This was entirely appropriate. *Beaudry*, 331 F.3d at 1166 n.3; *Sadeghi v. Immigration & Naturalization Serv.*, 40 F.3d 1139, 1143 (10th Cir. 1994) (considering a newly raised argument in reply because it responded to an opposition brief contention).

If Vail believed that Appellants improperly raised new arguments on reply, its remedy was to seek leave to file a sur-reply. *Allianz Life Ins. Co. of N. Am. v. Muse*, No. 20-6026, 2022 WL 3701606, at *9 (10th Cir.

47

Aug. 26, 2022); *Pippin v. Burlington Res. Oil Gas Co.*, 440 F.3d 1186, 1192 (10th Cir. 2006) (same). But Vail did not.

Finally, even assuming *arguendo* that all of the arguments were not properly raised before the Magistrate, they were properly raised in Appellants' opening brief in support of their objection to the District Court, which had a constitutional obligation to consider all the arguments on a *de novo* review. *Peretz v. United States*, 501 U.S. 923, 939 (1991); *Ocelot Oil Corp. v. Sparrow Industries*, 847 F.2d 1458, 1464 (10th Cir. 1988); First Union Mortgage Corp., v. Smith*, 229 F.3d 992, 995 (10th Cir.2000). Thus, the District Court's decision not to "indulge Plaintiffs in a review of arguments" constitutes reversible error.

The District Court also refused to address Appellants' argument concerning the authorized by congress exemption because the court was unjustifiably "growing concerned about Plaintiffs' counsel's trend of waiting to raise new arguments in reply briefs." 5-AA-1189n.1 citing Docs. 89, 95, 118, 124. The District Court, however, was mistaken. Documents 89 and 95 refer to Appellants' AWA motion opening and reply briefs. 2-AA-406-430; 3-AA-898-916. But, Appellants did not raise new arguments on reply. Instead, Appellants responded to Vail's opposition

48

arguments, which is the purpose of a "reply" brief. *Underwood v. Bank of Am. Corp.*, 996 F.3d 1038, 1055 n.13 (10th Cir. 2021) (court properly considers a new issue argued in reply that is offered in response to an argument raised in the opposition brief); *Banker v. Gold Res. Corp.*, 776 F.3d 1103, 1119 (10th Cir. 2015) (same).

The same is true with Appellants' opening and reply briefs in support of their objection to the Magistrate's recommendation to deny Plaintiffs' motion for conditional certification. 5-AA-1045-1057. In their opening brief, Appellants objected to the Magistrate's *sua sponte* recommendation to strike without prejudice 18 opt-in plaintiff consents. 5-AA-1065. In response, Vail argued the Magistrate "struck the consents because he denied conditional certification: **'[*b]ecause this Court recommends denying the motion for conditional certification*, it also recommends striking without prejudice the eighteen notices to opt-in *as the Court cannot discern whether these parties are similarly situated*.'** R&R, p. 8 (emphasis added)." 5-AA-1097. Appellants' reply brief properly responded to these arguments. 5-AA-1132.

**F.  Even if the AIA Applies, the District Court Should Have Enjoined Vail Under the "Authorized by Act of Congress" Exception**

The District Court also erred by refusing to consider Appellants' arguments or authorities, mistakenly suggesting Appellants relied on "cases that are not binding here." 5-AA-1187.  But Appellants cited, and the District Court apparently ignored, binding Supreme Court and Tenth Circuit precedent. 5-AA-1108, 1114-22. And Appellants' out-of-circuit authority also was on-point, supported the AWA injunction, and was germane to the District Court's analysis, particularly absent binding Tenth Circuit law.  Indeed, the Tenth Circuit "often [relies] upon the analysis and decisions of other circuit courts of appeals." *U.S. v. Carson*, 793 F.2d 1141, 1147 (10th Cir. 1986).

Ignoring Appellants' authorities, the R&R's AIA analysis is inaptly predicated on *Smith v. Bayer Corp.*, 564 U.S. 299 (2011).  Unlike here, that dispute "involve[d] the last of the Act's three exceptions, known as the relitigation exception."  *Smith*, 564 U.S. at 306.  Moreover, CAFA—enacted after *Smith*—avoids *Smith*'s concurrent state and federal litigation conflict.  564 U.S. at 317.

50

Instead, the District Court should have relied upon *Mitchum v. Foster*, 407 U.S. 225 (1972), which explained that "[d]espite the seemingly uncompromising language of the anti-injunction statute prior to 1948, the Court soon recognized that exceptions must be made to its blanket prohibition if the import and purpose of other Acts of Congress were to be given their intended scope." *Id*. at 233-34. As a result, "the Court through the years found that federal courts were empowered to enjoin state court proceedings, despite the anti-injunction statute, in carrying out the will of Congress under at least six other federal laws" including "legislation providing for removal of litigation from state to federal courts." *Mitchum,* 407 U.S. 225 at 234. "In addition to the exceptions to the anti-injunction statute found to be embodied in these various Acts of Congress, the Court recognized other 'implied' exceptions to the blanket prohibition of the anti-injunction statute." *Mitchum,* 407 U.S. 225 at 235. The court explicitly found that in "order to qualify under the 'expressly authorized' exception of the anti-injunction statute, a federal law need not contain an express reference to that statute. [] Indeed, none of the previously recognized statutory exceptions contains any such reference" including the ***Fair Labor Standards Act:*** "The

51

federal courts have found that other Acts of Congress that do not refer to § 2283 or to injunctions against state court proceedings nonetheless come within the 'expressly authorized' language of the anti-injunction statute." *Mitchum*, 407 U.S. at 237, 238 n.25 (citing *Walling v. Black Diamond Coal Mining Co.*, 59 F. Supp. 348, 351 (WD Ky.) (the Fair Labor Standards Act); *see also Martinez v. Deaf Smith County Grain Processors*, 583 F. Supp. 1200, 1212 (N.D. Tex. 1984) (The court could "only give the FLSA its intended scope by enjoining the parties to this suit from taking any action to enforce or secure any of the benefits of the state court judgment."). Moreover, the Court continued, a "federal law need not expressly authorize an injunction of a state court proceeding in order to qualify as an exception." *Mitchum*, 407 U.S. at 237.

The statute governing removal procedures, 28 U.S.C. § 1446, provides that after the defendant has given notice of removal and filed the notice with the state court, the state court "shall proceed no further unless and until the case is remanded." 28 U.S.C. § 1446(d). This language is an express authorization to stay state court proceedings and therefore, injunctions in removed cases come within the first exception to the Anti–Injunction Act. *Mitchum v. Foster*, 407 U.S. 225, 234 (1972)

(reiterating that removal to federal court is a situation where there is an express authorization to enjoin state court proceedings); *Vendo Co. v. Lektro–Vend Corp.*, 433 U.S. 623, 640 (1977) ("The statutory procedures for removal of a case from state court to federal court provide that the removal acts as a stay of the state-court proceedings"); *Kansas Pub. Emp. Ret. Sys. v. Reimer Koger*, 77 F.3d 1063, 1069 (8th Cir. 1996) ("injunctions to stay state proceedings in removed cases come within the first exception to the Anti-Injunction Act"); *Rohe v. Wells Fargo Bank*, 988 F.3d 1256, 1261 n.5 (11th Cir. 2021) (The Supreme Court "has also long held that federal courts have the power to enjoin state-court proceedings in removed cases"); *Maseda v. Honda Motor Co., Ltd.*, 861 F.2d 1248, 1254 (11th Cir.1988) ("[A]fter removal, the jurisdiction of the state court absolutely ceases and the state court has a duty not to proceed any further in the case"); *Polyplastics, Inc. v. Transconex, Inc.*, 713 F.2d 875, 880 (1st Cir.1983) (removal statute automatically stays state proceedings when removal is effected; post-removal proceedings in state court in removed case are void *ab initio*; and a district court may enter order staying state proceedings, even though removal statute already automatically effected stay.)

53

In *Kansas Pub. Emp. Ret. Sys. v. Reimer Koger*, 77 F.3d 1063 (8th Cir. 1996), the Eighth Circuit explained that although the "removal statute only commands the state court to stay the case that was actually removed, it has been interpreted to authorize courts to enjoin later filed state cases that were filed for the purpose of subverting federal removal jurisdiction." 77 F.3d at 1069 (citing *In Frith v. Blazon-Flexible Flyer, Inc.*, 512 F.2d 899, 901 (5th Cir. 1975) (per curiam) (A "district court could enjoin a state court case filed after removal if the second case was 'an attempt to subvert the purposes of the removal statute'"); *Lou v. Belzberg,* 834 F.2d 730, 741 (9th Cir. 1987)( Recognizing the rule enunciated in *Frith:* "It would be of little value to enjoin continuance of a state case after removal and then permit the refiling of essentially the same suit in state court"). In other words, "after removal the plaintiff cannot file essentially the same case in a second state action to subvert federal jurisdiction." 77 F.3d at 1069.

Other courts have also "held that § 1446(d) authorizes the issuance of an injunction against separate, state-court copycat proceedings commenced for the purpose of subverting federal jurisdiction over a removed case." *Ackerman v. Exxonmobil Corp.*, 734 F.3d 237, 250-51 (4th

Cir. 2013). Indeed, "Courts [] have unanimously held that a [party's] fraudulent attempt to subvert the removal statute implicates the 'expressly authorized' exception to the Anti-Injunction Act and may warrant the granting of an anti-suit injunction." *Davis v. St. Group Corp.*, 488 F.3d 597, 605 (3d Cir. 2007).

Here, *Hamilton II* was improperly filed in state court by the same plaintiff based on the same facts as *Hamilton I* which was removed to federal court. Therefore, *Hamilton II,* which improperly split its claims*, subverts federal removal jurisdiction and may be enjoined under the "expressly authorized" exception. The rule against claim-splitting requires a plaintiff to assert all of its causes of action arising from a common set of facts in one lawsuit. By spreading claims around in multiple lawsuits in other courts or before other judges, parties waste "scarce judicial resources" and undermine "the efficient and comprehensive disposition of cases." *Katz v. Gerardi*, 655 F.3d 1212, 1217 (10th Cir. 2011); *Stone v. Dep't of Aviation*, 453 F.3d 1271, 1278 (10th Cir. 2006) ("Critically, that doctrine requires a plaintiff to join all claims together that the plaintiff has against the defendant whenever during

the course of the litigation related claims mature and are able to be maintained." (emphasis in original).

In sum, *Hamilton II* was improperly filed in state court by the same plaintiff based on the same facts as *Hamilton I* which was removed to federal court.  Therefore, *Hamilton II,* which improperly split its claims, subverts federal removal jurisdiction and may be enjoined under the "expressly authorized" exception.

## G.    Even if the AIA Applies, the District Court Should Have Enjoined Vail Under the "In Aid of Jurisdiction" Exception

According to the District Court, the in aid of jurisdiction exception only "applies when two suits, one in a state court and the other in a federal court, are (1) '*in rem* or *quasi in rem*, so that the court or its officer must have possession or control of the property which is the subject matter.'" 5-AA-1190-91 (quoting *Mandeville v. Canterbury*, 318 U.S. 47, 48-49 (1943)).  This is incorrect.

***First***, *Mandeville,* decided in 1943, pre-dates the current AIA, which was first adopted in 1948.  In 1943, "Section 265 of the Judicial Code, 28 U.S.C. § 379, provide[d] that except as authorized by any law relating to proceedings in bankruptcy 'the writ of injunction shall not be granted by any court of the United States to stay proceedings in any court

56

of a State.'" *Mandeville*, 318 U.S. at 48. Thus, prior to 1948, other than bankruptcy proceedings, ***there were absolutely no exceptions*** in the AIA but, as a practical matter, courts fashioned the *in rem* exception when there was no basis to do so in the statutory text. *Toucey v. N.Y. Life Ins. Co.*, 314 U.S. 118, 132 (1941). In response to *Toucey*, Congress amended the AIA in 1948. The new statute provided that a "court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." [8]

Moreover, the AIA's 1948 amendment was designed to overrule *Toucey* and expand the circumstances where federal courts could enjoin state court proceedings. There was no indication that the amendment was only intended to codify the *in rem* cases. In fact, since *Toucey* recognized the legitimacy of the *in rem* cases, if Congress merely intended to continue the *in rem* exemption, there was no need to amend the

---

[8] 28 U.S.C. § 2283. If Congress intended to limit the "in aid of its jurisdiction" exception to *in rem* or *quasi in rem* proceedings, it would have said so. *Romag Fasteners, Inc. v. Fossil, Inc.*, 140 S. Ct. 1492, 1495 (2020) ("Nor does this Court usually read into statutes words that aren't there").

statute. If that was Congress' intention, the text of amendment would have stated "or where necessary in aid of its ***in rem or quasi in rem*** jurisdiction." *Clothing Workers v. Richman Bros*, 348 U.S. 511, 515 n.1 (1955); *Parsons Steel, Inc. v. First Alabama Bank*, 474 U.S. 518, 524 (1986) ("Congress in 1948 amended the [AIA] to overrule[] *Toucey* [] in favor of the understanding of prior law expressed in Justice Reed's dissenting opinion"); *Steffel v. Thompson*, 415 U.S. 452, 477-78 (1974)(same); *Dowd v. Front Range Mines*, Inc., 242 F. Supp. 591, 596 (D. Colo. 1965)(The "effect of Section 2283 is to allow a federal court to enjoin enforcement of a state judgment, if necessary, in aid of its equitable jurisdiction"). In sum, the AIA's 1948 amendment codified Justice Reed's dissent which recognized that in "cases where the Federal court acts in aid of its own jurisdiction and to render its decree effectual, it may, notwithstanding [the AIA] restrain all proceedings in a state court which would have the effect of defeating or impairing its jurisdiction." *Toucey*, 314 U.S. at 147.

In any event, ***unpaid wages are property*** which constitutes a *res. See*, *e.g.*, *Lawson v. Grubhub, Inc.*, 13 F.4th 908, 915-16 (9th Cir. 2021) (citing *Cortez v. Purolator Air Filtration Prod. Co.*, 23 Cal.4th 163, 96

Cal.Rptr.2d 518, 999 P.2d 706, 709 (2000).  And even if back wages are not property that would implicate *in rem* or *quasi in rem* jurisdiction, the in-aid-of-jurisdiction exception authorizes injunctive relief "to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case." *Sandpiper Vill.*, 428 F.3d at 843 (quoting *Atl. Coast Line*, 398 U.S. at 295).  And an injunction may issue where "the state court action threatens to frustrate proceedings and disrupt the orderly resolution of the federal litigation." *In re Diet Drugs I*, 282 F.3d at 234 (quoting *Winkler v. Eli Lilly & Co.*, 101 F.3d 1196, 1202 (7th Cir.1996)). These concerns are acutely present here.

Finally, the District Court opined that the Supreme Court "recently emphasized the limited scope of [the in aid of jurisdiction] exception." 5-AA-1190n.2. (citing *Shoop v. Twyford*, 142 S. Ct. 2037 (2022)). Not true. *Shoop* did not even involve the AIA; the case concerned the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).  *Shoop*, 142 S. Ct. at 2046.

**H.    The District Court Committed Reversible Error by Refusing to Issue the AWA Injunction Resulting in an Abstention in Favor of a State Court in Violation of the Colorado River Doctrine**

The District Court improperly abstained its jurisdiction in favor of a California state court contrary to the Colorado River Doctrine.  As the Supreme Court explained the "doctrine of abstention, under which a District Court may decline to exercise ***or postpone*** the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it.  Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the State court would clearly serve an important countervailing interest." *Colorado River*, 424 U.S. at 813.

When two cases are pending in different "federal district courts, however, though no precise rule has evolved, the general principle is to avoid duplicative litigation." *Colorado River*, 424 U.S. at 817.  The difference in the "general approach between state-federal concurrent jurisdiction and wholly federal concurrent jurisdiction stems from the ***virtually unflagging obligation of the federal courts to exercise the jurisdiction given them***." *Id.* at 817-18.  As this Court has

explained, the "need for a difference in approaches stems from the different purposes underlying each type of abstention: When a federal district court defers in favor of another federal case, the only concern is venue because federal jurisdiction will be exercised in one of the two districts." *Wakaya Perfection, LLC v. Youngevity Int'l, Inc.*, 910 F.3d 1118, 1122 (10th Cir. 2018).

None of the factors that led the Supreme Court to uphold abstention in *Colorado River* are present here.  In fact, all of the factors analyzed by the District Court compel the conclusion that giving priority to the state court is improper. *Colorado River*, 424 U.S. at 819-20.

After *Colorado River*, the Supreme Court emphasized that its task "is not to find some substantial reason for the exercise of federal jurisdiction by the district court; rather, the task is to ascertain whether there exist 'exceptional' circumstances, the 'clearest of justifications,' that can suffice under *Colorado River* to justify the surrender of that jurisdiction" and the "presence of federal-law issues must always be a major consideration weighing against surrender." *Moses H. Cone Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25-26 (1983). Notably, the Court concluded a "stay is as much a refusal to exercise federal jurisdiction as

a dismissal. When a district court decides to dismiss or stay under *Colorado River*, it presumably concludes that the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties. If there is any substantial doubt as to this, it would be a serious abuse of discretion to grant the stay or dismissal at all. []Thus, the decision to invoke *Colorado River* necessarily contemplates that the federal court will have nothing further to do in resolving any substantive part of the case, whether it stays or dismisses." *Id*. at 28; *accord Wakaya Perfection,* 910 F.3d at 1121 (the "*Colorado River* test requires 'exceptional circumstances' and an 'important countervailing interest' for a federal court to abstain from exercising jurisdiction based on pending litigation in state court").

Since the District Court did not take any action to exercise or protect its jurisdiction, it effectively abstained from exercising its jurisdiction in favor of a state court. 5-AA-1192. When one case is in federal court and another is in state court, it is reversible error if the district court does not apply the *Colorado River* test. *Wakaya Perfection*, 910 F.3d at 1121, 1123-24.

## I.    The District Court Erred in Failing to Enforce the "First Filed" Rule

The Tenth Circuit has explained that when "two federal suits are pending" as a "starting point, courts should apply the first-to-file rule" which the Tenth Circuit has "adopted [] as a baseline." *Wakaya Perfection*, 910 F.3d at 1124. "Under this rule, courts consider three factors: '(1) the chronology of events, (2) the similarity of the parties involved, and (3) the similarity of the issues or claims at stake.'" *Id.* (quoting *Baatz v. Columbia Gas Transmission, LLC*, 814 F.3d 785, 789 (6th Cir. 2016)).  These factors, however, "are not exhaustive, and other equitable factors may bear on the inquiry" including "inequitable conduct, bad faith, anticipatory suits, and forum shopping as equitable considerations." *Wakaya*, 910 F.3d at 1124.  Contrary to the R&R, the Tenth Circuit emphasized that a court must "consider ***not only the chronology of events but also the similarities in the parties, issues, and claims***." *Wakaya,* 910 F.3d at 1124.  The Magistrate and District Court erred by looking only at the chronology.

Yet even the lower court's chronology analysis was fatally flawed. "To determine chronology, [] typically requires only a comparison of the two filing dates" of the relevant complaints.  *Wakaya,* 910 F.3d at 1124.

63

Courts should focus on the filing date, not the removal date because to do otherwise would "reward gamesmanship" and "allow defendants to manipulate the first-to-file rule by suing in another forum before removing the first case. This sort of manipulation would allow defendants, not plaintiffs, to select the forum for the plaintiff's claim." *Wakaya,* 910 F.3d at 1125-26. Moreover, the "sequence of filings bears on both the first-to-file rule and the *Colorado River* test. But,[] the two tests vary in the weight placed on which complaint was filed first. When both cases are pending in federal courts, the first-filed case often obtains priority. But when one of the cases is in state court, the sequence of filing dates is less likely to be determinative because of the federal court's virtually unflagging obligation to exercise its jurisdiction." *Wakaya*, 910 F.3d at 1126 n.4 (quotation marks omitted). Neither the Magistrate nor the District Court adhered to this guidance.

The lower court also should have considered, but did not, "whether the two cases bear substantial overlap in (1) the parties and (2) the issues or claims." *Wakaya,* 910 F.3d at 1126-27 (10th Cir. 2018) (citing *Baatz v. Columbia Gas Transmission, LLC*, 814 F.3d 785, 790–91 (6th Cir. 2016)). "In order for suits filed in different districts to be duplicative, they must

involve nearly identical parties and issues." *Baatz v. Columbia Gas Transmission, LLC*, 814 F.3d 785, 789 (6th Cir. 2016).

Here, the Colorado Action, filed in the District of Colorado (where Vail is headquartered) on December 3, 2020, was the first case to allege FLSA and nationwide state labor law claims against Vail. Moreover, the Colorado Action FLSA claims are broader than those alleged in *Gibson*, and the Colorado Action alleges broader state law claims. 5-AA-1123 (*compare* Colorado Action, ECF No. 1 at ¶¶63-74 (definitions of 10 classes), ¶¶85-192 (4 FLSA counts), and ¶¶93-519 (14 state law counts) with *Gibson*, ECF No. 1 at ¶¶62-71 (one FLSA overtime claim), ¶¶72-132 (California state law claims). By contrast, Vail is not a defendant in *Heggen*, which alleges claims only under California law (explicitly disclaiming any federal claims) on behalf of Heavenly employees against Heavenly only, or in *Hamilton*, which similarly alleges claims under California state law only against Heavenly only. The actions have important ***dissimilarities*** as to both parties (factor 2) and issues (factor 3). *Heggen* sued only Heavenly Valley (a Vail subsidiary), brought only California claims (explicitly disclaimed federal claims), and the *Heggen* class is subsumed within the Colorado Action, which asserts 10 separate

subclasses, but not vice-versa. So *Heggen* cannot be "first filed" when compared to the Colorado Action. *See Martin v. Medicredit, Inc.*, No. 4:16CV01138 ERW, 2016 WL 6696068, at \*5 (E.D. Mo. Nov. 15, 2016) (denying motion to stay based "upon the presence of different defendants and significant disparities in the definitions of the putative classes"); *Lloyd v. J.P. Morgan Chase & Co.*, No. 11 CIV. 9305 LTS, 2012 WL 3339045 (S.D.N.Y. Aug. 14, 2012); *Riley v. General Motors*, 2022 WL 787871, at \*1, \*4-\*5 (S.D. Ohio Mar. 15, 2022).

*Gibson* post-dates the Colorado Action by at least five months. *Gibson* "commenced" when the complaint was filed on April 20, 2021, *Pacesetter Sys., Inc. v. Medtronic, Inc.,* 678 F.2d 93, 96 n.3 (9th Cir. 1982), ***not*** the date of plaintiff's PAGA letter); *see also* Cal. Civ. Proc. Code § 350 ("An action is commenced, within the meaning of this Title, when the complaint is filed."). Moreover, seeking an administrative remedy (e.g., sending a PAGA letter) does not commence an action. *See*, *e.g.*, *Twp. of Bordentown v. Fed. Energy Regulatory Comm'n*, 903 F.3d 234, 267 (3d Cir. 2018)(collecting cases). *Gibson* "commenced" in federal court when Vail removed it to the Eastern District on July 20, 2021. Fed. R. Civ. P.

66

3 ("A civil action is commenced by filing a complaint with the court."). 4-AA-724-739.

## CONCLUSION

For the foregoing reasons, this Court should reverse the District Court's Order overruling Appellants' Objections and issue a permanent injunction or direct the District Court to issue a permanent injunction against Vail's settlement in the California Actions.

Respectfully Submitted,

Date:  November 18, 2022        By: s/ *Edward P. Dietrich*
Edward P. Dietrich
EDWARD P. DIETRICH, APC
9595 Wilshire Boulevard, Suite 900
Beverly Hills, CA 90212
(310) 300-8450 • Fax: (310) 300-8401
edward@dstlegal.com
*Attorneys for Appellants Randy Dean Quint et al.*

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument is requested. This is a case of significant national importance involving the federal and state labor laws and thousands of hourly employees. Because of the national significance of this issue, Appellants respectfully submit that oral argument would be beneficial.

Respectfully Submitted,

Date:  November 18, 2022        By: s/ *Edward P. Dietrich*
Edward P. Dietrich
EDWARD P. DIETRICH, APC
9595 Wilshire Boulevard, Suite 900
Beverly Hills, CA 90212
(310) 300-8450 • Fax: (310) 300-8401
edward@dstlegal.com
*Attorneys for Appellants Randy Dean*
*Quint et al.*

## CERTIFICATE OF COMPLIANCE

Counsel for Appellants certifies:

1.     This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B).   This brief contains 12,742 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

2.     This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the typestyle requirements of Federal Rule of Appellate Procedure 32(a)(6).   This brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.


Respectfully Submitted,


Date: November 18, 2022        By: s/ *Edward P. Dietrich*
                              Edward P. Dietrich
                              EDWARD P. DIETRICH, APC
                              9595 Wilshire Boulevard, Suite 900
                              Beverly Hills, CA 90212
                              (310) 300-8450 • Fax: (310) 300-8401
                              edward@dstlegal.com
                              *Attorneys for Appellants Randy Dean Quint et al.*

# ADDENDUM

**IN THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF COLORADO
Judge Daniel D. Domenico**

Civil Case No. 1:20-cv-03569-DDD-GPG

RANDY D. QUINT;
JOHN LINN; and
MARK MOLINA; on behalf of all others similarly situated,

    Plaintiffs,

v.

VAIL RESORTS, INC.,

    Defendant.

---

**ORDER OVERRULING OBJECTIONS TO MAGISTRATE JUDGE'S
ORDER ON MOTION FOR EMERGENCY PERMANENT INJUNCTION**

---

Before me are Plaintiffs' objections (Doc. 123) to United States Magistrate Judge Gallagher's report (Doc. 120) recommending Plaintiffs' Emergency Motion for Permanent Injunction under the All Writs Act be denied (Doc. 89). This is one of several cases involving similar claims against Defendant Vail Resorts: (1) *Gibson v. The Vail Corp., et al*, No 2:21-cv-01260-KM-AC (E.D. Cal.); (2) *Heggen v. Heavenly Valley, LP*, No. 2:21-cv-00107-WBS-DB (E.D. Cal.); (3) *Hamilton v. Heavenly Valley, LP*, No. 2:21-cv-01608-MCE-DB (E.D. Cal.) (*Hamilton I*); (4) *Hamilton v. Heavenly Valley, LP*, No. SC20210148 (Cal. Sup. Ct.) (*Hamilton II*); and (5) *Roberds v. The Vail Corp.*, No. SC20210164 (Cal. Sup. Ct.). The parties in *Gibson*, *Heggen*, *Hamilton I*, and *Hamilton II* have reached nationwide settlements, pending court approval. (Doc. 94 at 3.) Plaintiffs move to enjoin Vail from finalizing a settlement in the California state court action or any other court. (Doc. 89 at 5.) Plaintiffs' objections are overruled, and the motion is denied.

ADD-1

**STANDARD OF REVIEW**

When reviewing a magistrate judge's order that is not dispositive of a party's claim or defense, a Court should "modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A). The magistrate judge's factual findings may not be set aside unless "on the entire evidence [the court] is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948); *Residences at Olde Town Square Assoc. v. Travelers Cas. Ins. Co. of Am.*, 413 F. Supp. 3d 1070, 1072 (D. Colo. 2019) (citing *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1464 (10th Cir. 1988)). Legal determinations may be set aside if the magistrate judge applied the wrong legal standard or applied the appropriate legal standard incorrectly. *Olde Town Square*, 413 F. Supp. 3d at 1072 (citing 12 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3069 (2d ed.)).

**DISCUSSION**

Plaintiffs object to Judge Gallagher's order denying their Emergency Motion for Permanent Injunction under the All Writs Act because, they say, (1) the California settlement is facially collusive and indicative of a reverse auction, (2) the Anti-Injunction Act does not apply, (3) even if the Anti-Injunction Act applies, an injunction is proper under two exceptions, and (4) the first filed rule and *Colorado River* abstention. (Doc. 123.)

**I.     Indicia of Collusion & Reverse Auction**

Judge Gallagher stated that "Plaintiffs fail to point to any facts to support the serious accusation that this is an abusive or collusive

2

ADD-2

settlement and this Court takes umbrage at the insinuation that another federal or state judge would be so unethical as to permit such nefarious conduct." (Doc. 120 at 5.) Plaintiffs argue this "ignores all 'indicia of collusion,' concluding that Plaintiffs failed to identify any facts suggesting an improper settlement" and the California settlement agreement is the product of a reverse auction. (Doc. 123 at 6.) A reverse auction is "the practice whereby the defendant in a series of class actions picks the most ineffectual class lawyers to negotiate a settlement with the hope that the district court will approve a weak settlement that will preclude other claims against the defendant." *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 282-83 (7th Cir. 2002).

First, Judge Gallagher's finding that there were no facts supporting the contention that the settlement is abusive or collusive is not clearly erroneous. The allegedly collusive behavior is for the most part simply Plaintiffs' disagreement with the settlement agreement reached in the other cases. It is at least as likely the product of good faith negotiations and decisionmaking rather than anything nefarious.

And as Vail points out, Plaintiffs provide no precedent for the proposition that this federal court is empowered to undertake a review of a settlement agreement reached in a different court, before a different judge. (*See* Doc. 120) ("this Court takes umbrage at the insinuation that another federal or state judge would be so unethical as to permit such nefarious conduct"). Plaintiffs' objection cites only to cases that are not binding here. *See Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) ("A decision of a federal district judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case."); *F.D.I.C. v. Daily*, 973 F.2d 1525, 1532 (10th Cir. 1992) ("Decisions of the Ninth Circuit Court of Appeals are not binding on the Tenth Circuit Court of Appeals."). More significantly,

ADD-3

all the cases provided by Plaintiffs discuss district court examination of settlement agreements in lawsuits in front of that court. *Kim v. Allison*, 8 F.4th 1170, 1182 (9th Cir. 2021) (analyzing the district court's approval of the settlement); *In re Community Bank*, 418 F.3d 277, (3d Cir. 2005) (discussing district court's verbatim adoption of parties' proposed findings of fact and conclusions of law before approving settlement); *Ross v. Convergent Outsourcing, Inc.*, 323 F.R.D. 656, 660-61 (D. Colo. 2018) (holding that district court would not grant preliminary approval of class settlement); *Figueroa v. Sharper Image*, 517 F. Supp. 2d 1292, (S.D. Fla. 2007) (considering proposed settlement agreement of case before it). These cases are thus inapposite here, where the Plaintiffs urge me to scrutinize another judge's decision and authority.

I also agree with Judge Gallagher's conclusion that that Local Rule 3.2(c) "does not permit this Court to enjoin the California cases from proceeding, and even if Defendant hypothetically could have been more forthcoming with related cases at an earlier date, this Court does not find that such conduct would rise to the level of sanctions." (Doc. 120 at 5.) Under Local Rule 3.2, a party to a case shall file notice with the court identifying all cases pending in this or any other federal, state, or foreign jurisdiction that are related to the case. Judge Gallagher noted that Vail provided notice of *Hamilton I*, *Gibson*, and *Heggen* in August 2021 and supplemental notice in November 2021 and December 2021. (*Id.* at 4.) Vail provided notice under Local Rule 3.2(c), and sanctions are not warranted in this situation. Judge Gallagher's factual findings and legal application are not clearly erroneous or contrary to law.

4

ADD-4

## II.     Anti-Injunction Act & Exceptions

The Anti-Injunction Act generally precludes injunctions against state court proceedings. *Tooele Cnty. v. United States*, 820 F.3d 1183, 1187 (10th Cir. 2016). There are three exceptions:

1. Congress has expressly authorized an injunction;
2. The injunction is necessary in aid of its jurisdiction; and
3. The injunction is necessary to protect or effectuate a previous judgment in federal district court.

28 U.S.C. § 2283. At various points in their motion and reply, Plaintiffs contend that all three exceptions apply. (*See* Doc. 89 at 9, Doc. 95 at 7.) Judge Gallagher's report only addresses the second and third exceptions. (*See* Doc. 120 at 8.) But he did not have to discuss an argument raised only in the reply.[1] *See Beaudry v. Corrections Corp. of America*, 331 F.3d 1164, 1166 n.3 (10th Cir. 2003) ("court generally does not review issues raised for the first time in a reply brief"). Nor will I indulge Plaintiffs in a review of arguments not properly raised before Judge Gallagher. *See id.*

Plaintiffs assert that Judge Gallagher's failure to address *Hillman v. Webley* is clear error. In *Hillman*, the Tenth Circuit held that the All Writs Act did not provide the district court with the authority to remove state court action to protect a settlement order in a multidistrict

---

[1]  I am growing concerned about Plaintiffs' counsel's trend of waiting to raise new arguments in reply briefs. (*See* Docs. 89, 95, 118, 124.) In a similar vein, Plaintiffs have twice misstated the standard of review. (*See* Doc. 118 at 1, Doc. 123 at 5.) Misstating the law to the court, not once but twice, is not something I take lightly. Nor I am amused by the apparent gamesmanship of raising entirely new arguments in reply briefs. While I will not speculate as to whether these errors were intentional, I remind counsel that they have ethical obligations of candor to the court and general competency. *See* Model Rules 1.1 and 3.3. Should such errors continue, I may have to take additional measures to ensure that Plaintiffs' counsel adhere to their ethical obligations.

ADD-5

litigation case. 115 F.3d 1461, 1469 (10th Cir. 1997). Plaintiffs
emphasize that the *Hillman* Court provided that the "district court
undoubtedly had the authority under the All Writs Act to enjoin parties
before it from pursuing conflicting litigation in the state court." *Id.* But
*Hillman* involved the problem of a state court action that "threaten[ed]
to frustrate a settlement order entered by a federal court" in a complex
multidistrict litigation securities class action. *Id.* at 1468. This is in
many ways the mirror image: Plaintiffs ask me to frustrate settlement
proceedings in a state court, not exercise authority to protect a
settlement proceeding before this court.

Plaintiffs' end goal remains the same regardless of how they phrase
it: to stop the consummation of the settlement agreement. They assert
that they "do not seek to enjoin Vail from litigating the state court
action." (Doc. 123 at 9.) But preventing Vail from resolving the state
court action through settlement is an attempt to enjoin it from litigating
that action. Because the Anti-Injunction Act governs the interference in
state court proceedings, which is the relief Plaintiffs request, Judge
Gallagher's application of the Act in these circumstances is not contrary
to law. *Olde Town Square*, 413 F. Supp. 3d at 1072.

Plaintiffs also contend that an injunction is necessary in aid of this
court's jurisdiction. (Doc. 123 at 12.) This exception, which is construed
narrowly[2], applies when two suits, one in a state court and the other in
a federal court, are (1) "in rem or quasi in rem, so that the court or its
officer must have possession or control of the property which is the
subject matter" and (2) "the court first acquiring jurisdiction or
assuming control of such property is entitled to maintain and exercise

---

[2]    The Supreme Court recently emphasized the limited scope of this
exception. *See Shoop v. Twyford*, No. 21-511, slip op. at 11 (2022).

ADD-6

its jurisdiction to the exclusion of the other." *Mandeville v. Canterbury*, 318 U.S. 47, 48-49 (1943). An "in rem proceeding affect[s] the interests of all persons in the property [while an] action quasi in rem . . . affects the interests of only some persons in the property." *Tooele Cnty.*, 820 F.3d at 1188. Plaintiffs contend that this exception applies because "back wages are property." (Doc. 123 at 12.)

Again instead of providing binding precedent for this proposition, the only cases provided in support are from another circuit and California state courts. Plaintiffs' cases, moreover, do not discuss whether back wages are in rem or quasi in rem. *See Lawson v. Grubhub, Inc.*, 13 F.4th 908 (9th Cir. 2021); *Reyes v. Van Elk*, 56 Cal. Rptr. 3d 68 (Ct. App. 2007); *Sims v. AT&T Mobility Servs.*, 955 F.Supp. 2d 1110 (E.D. Cal 2013). Nor have I been able to find any Tenth Circuit precedent suggesting that back wages are considered in rem or quasi in rem. In any event, this court does not have possession or control over any property in this matter.[3] Judge Gallagher's conclusion that the second exception did not apply is not clearly erroneous or contrary to law. *See Gypsum Co.*, 333 U.S. at 395.

While Plaintiffs do not expressly object to Judge Gallagher's analysis of the third exception (the relitigation exception), I still have an obligation to review it, though under any standard I deem appropriate. *See Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991). Under any standard, I agree with Judge Gallagher. The relitigation exception "authorizes an injunction to prevent state litigation of a claim or issue that previously was presented to and decided by the federal court."

---

[3]     As Vail points out, this court's jurisdiction is based on Vail's headquarters and conduct in the state of Colorado, not where some property is located, or which court has possession of a given piece of property. *See Mandeville*, 318 U.S. at 48-49.

*Smith v. Bayer Corp.*, 564 U.S. 299, 306 (2011) (quoting *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140 (1988)). Judge Gallagher is correct that there is no final judgment and in turn there are no issue or claim preclusion disputes. (*See* Doc. 120 at 9.) So his determination that the second exception does not apply is not clearly erroneous or contrary to law. *See Gypsum Co.*, 333 U.S. at 395.

### III.    First-Filed Rule & Colorado River Abstention

Plaintiffs contend that Judge Gallagher's report "erroneously suggests that this Court may abstain from exercising jurisdiction in favor of the California court under *Colorado River Water Dist. v. United States*, 424 U.S. 800 (1976). (Doc. 123 at 12.) They also argue that the report is "erroneous because it did not conduct the first-filed analysis mandated by the Tenth Circuit." (*Id.* at 14.) Judge Gallagher concluded that "either: (1) the cases in the Eastern District of California are related to the instant case, but Plaintiffs are not the first to file because *Heggen* preceded *Quint*, or (2) the cases in the Eastern District of California are not related and Plaintiffs' arguments in the instant motion to halt proceedings in those cases are meritless." (*Id.* at 8.)

Plaintiffs' first argument regarding *Colorado River* misunderstands the report and recommendation. Under *Colorado River*, a federal district court faced with exceptional circumstances may abstain if there is a parallel state case and the relevant factors weigh in favor of abstention. *Id.* at 819. Plaintiffs misinterpret Judge Gallagher's report. He did not recommend abstention under *Colorado River*; he instead cited to *Colorado River* as a contradictory proposition to his explanation that the first-to-file does not pertain to a case filed and proceeding state court. (Doc. 123 at 6.)

ADD-8

Plaintiffs' second argument—that "the Report is also erroneous because it did not conduct the first-file rule analysis mandated by the Tenth Circuit"—is wrong as well. (*See* Doc. 123 at 14.) Judge Gallagher did apply the standard outlined by the Tenth Circuit in *Wakaya Perfection, LLC v. Youngevity Int'l, Inc.*, 910 F.3d 1118 (10th Cir. 2018) and stated the applicable factors that may be considered as provided in *Crocs, Inc. v. Cheng's Enters., Inc.*, No. 06-cv-00605-PAB-KMT, 2015 WL 5547389 (D. Colo. Sept. 21, 2015). (Doc. 120 at 6-7.) The first-to-file rule is an equitable rule to avoid duplicative litigation that "'permits,' but does not require, a federal district court to abstain from exercising its jurisdiction in deference to a first-filed case in a different federal district court." *Wakaya*, 910 F.3d at 1124. Judge Gallagher correctly emphasized that this rule is specific to federal district courts, and Plaintiffs are focused on a state case. Even if the first-filed rule applied here, Judge Gallagher applied the factors. (Doc. 120 at 7-8.) When conducting this analysis, courts exercise discretion "on a case-by-case basis when weighing the impact of which case was filed first." *Id.* at 1126. Other courts have considered the following factors: "(1) the chronology of actions; (2) the similarity of parties; and (3) the similarity of issues." *Crocs*, 2015 WL 5547389 at *3. Judge Gallagher highlighted one of the *Crocs* factors: the *Heggen* action was filed before this action. (Doc. 120 at 7.) He performed a case-specific inquiry and discussed the most relevant factor. This portion of his report is neither clearly erroneous nor contrary to law.

ADD-9

**CONCLUSION**

Plaintiffs' objections to United States Magistrate Judge Gallagher's Report and Recommendation (Doc. 123) are OVERRULED. The Report and Recommendation (Doc. 120) is ACCEPTED and ADOPTED. Plaintiffs' Emergency Motion for Permanent Injunction under the All Writs Act (Doc. 89) is DENIED.

DATED: June 27, 2022.                    BY THE COURT:

_____
Daniel D. Domenico
United States District Judge

10

ADD-10

## CERTIFICATE OF DIGITAL SUBMISSION

Counsel for Appellants hereby certifies that all required privacy redactions have been made, which complies with the requirements of Federal Rules of Appellate Procedure 25 (a)(5).

Counsel also certifies that the hard copies submitted to the Court are exact copies of the ECF filing of November 18, 2022.

Counsel further certifies that the ECF submission was scanned for viruses with the most recent version of a commercial virus scanning program (Vipre software version 12.3.8147; Definitions version $105782 - 7.93351$ [November 18, 2022 Vipre engine version $5.6.8.8 - 3.0$), and according to the program, is free of viruses.

Respectfully Submitted,

Date: November 18, 2022        By: s/ *Edward P. Dietrich*

Edward P. Dietrich
EDWARD P. DIETRICH, APC
9595 Wilshire Boulevard, Suite 900
Beverly Hills, CA 90212
(310) 300-8450 • Fax: (310) 300-8401
edward@dstlegal.com
*Attorneys for Appellants Randy Dean Quint et al.*

## CERTIFICATE OF FILING AND SERVICE

I hereby certify I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Tenth Circuit by using the CM/ECF system on November 18, 2022. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system, which constitutes service pursuance to Federal Rule of Appellate Procedure 25(c)(2) and Tenth Circuit Rule 25-4.

Respectfully Submitted,

Date: November 18, 2022          By: s/ *Edward P. Dietrich*

Edward P. Dietrich
EDWARD P. DIETRICH, APC
9595 Wilshire Boulevard, Suite 900
Beverly Hills, CA 90212
(310) 300-8450 • Fax: (310) 300-8401
edward@dstlegal.com
*Attorneys for Appellants Randy Dean Quint et al.*